Frank L. HAYNES, Appellant,

v.

Charles S. THOMAS, Individually and as Secretary of the Navy, Appellee.

No. 12807.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 13, 1955.

Decided April 19, 1956.

Mr. James H. Heller, Washington, D. C., for appellant.

Mr. Milton Eisenberg, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and BASTIAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The question on this appeal is whether a person holding an indefinite appointment as a civilian employee of the Navy is, during his trial or probationary period of service, a "civilian officer or employee" who may not be discharged for security reasons without observance of the procedures prescribed by an Act of August 26, 1950, 64 Stat. 476, 5 U.S.C.A. § 22–1 et seq., Public Law 733, 81st Cong., 2d Sess.

Frank L. Haynes was given an indefinite appointment May 25, 1953, as an

engineering draftsman at the New York Naval Shipyard, "[s]ubject to trial period which ends on 5/24/54." On or about February 3, 1954, the Commander of the Shipyard advised Haynes by registered mail as follows:

"In connection with the Government's security program, information has been received which raises a question concerning your fitness for continued employment. In order to help resolve this matter, it is requested that you fill out the questionnaire attached hereto * * *."

Haynes answered the questionnaire. March 25, 1954, he was informed by Commander Andrews of the Shipyard it had been initially determined that he was a poor security risk, and that he—Andrews—was to interview him concerning his answers to the questionnaire. The interview was had.

March 31, 1954, Haynes' counsel requested of the Commanding Admiral a period of thirty days within which to submit statements and affidavits refuting the charges against him. Instead of granting the request, the Admiral issued April 7, 1954, and sent to Haynes a Notification of Personnel Action, the nature of which was therein described as "Separation (Disqualification) during trial period." The notice contained the following:

"You were given an indefinite appointment as Engineering Draftsman GS-4, on 25 May 1953, subject to satisfactory completion of a trial period of one year, including investigation with satisfactory results. Investigation has disclosed that you and your wife registered under the American Labor Party; that your wife was the Recording Secretary of an organization which has been designated by the Attorney General of the United States pursuant to Executive Order 10450 [5 U.S.C.A. § 631 note]; and that her name appeared in two articles of a Communist front publication. You were given written interrogatories and subsequently orally inter-

viewed. Your explanations were considered but not deemed satisfactory.

"Accordingly, your appointment will be terminated at the close of business on the date shown in item 6 above [April 9, 1954]."

After an unsuccessful attempt to appeal to the Civil Service Commission, Haynes sued for a declaratory judgment that he had been wrongfully discharged, and for an order directing the Secretary of the Navy to reinstate him. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted, and Haynes appeals from that ruling.

■ We have said repeatedly that courts will not review the action of executive officials in dismissing executive employees except to insure compliance with statutory requirements. Bailey v. Richardson, 1950, 86 U.S.App.D.C. 248, 266, 182 F.2d 46, 64 (and the cases there cited in note 69). We also said in the Bailey opinion "that the President, absent congressional restriction, may remove from Government service any person of whose loyalty he is not completely convinced. He may do so without assigning any reason and without giving the employee any explanatory notice. * * *" 86 U.S.App.D.C. at page 267, 182 F.2d at page 65.

It is therefore necessary to ascertain whether the dismissal of Haynes was ordered after compliance with applicable statutory requirements. He insists he was entitled to the benefit of the procedures set up in the Act of August 26, 1950, which admittedly were not followed. The appellee contends that Act does not relate to the separation of employees during their probationary service. The question is then whether the statute was applicable. We turn to the Act for the answer.

Public Law 733 authorizes the Secretary of the Navy (and various other department and agency heads) "in his absolute discretion and when deemed necessary in the interest of national se-

curity" to suspend, without pay, "any civilian officer or employee." Several provisos which follow the grant of this power of suspension prescribe procedures which the agency head must follow before the suspended employee may be discharged. Two of these limiting provisions are pertinent here:

*First Proviso.* "* * * *Provided,* That to the extent that such agency head determines that the interests of the national security permit, the employee concerned shall be notified of the reasons for his suspension and within thirty days after such notification any such person shall have an opportunity to submit any statements or affidavits to the official designated by the head of the agency concerned to show why he should be reinstated or restored to duty. The agency head concerned may, following such investigation and review as he deems necessary, terminate the employment of such suspended civilian officer or employee whenever he shall determine such termination necessary or advisable in the interest of the national security of the United States, and such determination by the agency head concerned shall be conclusive and final * * *."

*Second Proviso.* "* * * *Provided further,* That any employee having a permanent or indefinite appointment, and having completed his probationary or trial period, who is a citizen of the United States whose employment is suspended under the authority of sections 22–1 to 22–3 of this title, shall be given after his suspension and before his employment is terminated under the authority of said sections, (1) a written statement within thirty days after his suspension of the charges against him, which shall be subject to amendment within thirty days thereafter and which shall be stated as specifically as security considerations permit; (2) an opportunity within thirty days thereafter (plus an additional thirty days if the charges are amended) to answer such charges and to submit affidavits; (3) a hearing, at the employee's request, by a duly constituted agency authority for this purpose; (4) a review of his case by the agency head, or some official designated by him, before a decision adverse to the employee is made final; and (5) a written statement of the decision of the agency head * * *."

The somewhat summary procedure prescribed in the first proviso governs the suspension and dismissal of "any civilian officer or employee" for national security reasons. The more detailed and more protective procedure set up in the second proviso is to be followed in the suspension and dismissal for those reasons of "any employee having a permanent or indefinite appointment, and having completed his probationary or trial period, who is a citizen of the United States." The appellant is an American citizen and had an indefinite appointment, but, because he had not completed his probationary or trial period, he was not entitled to the benefit of the second proviso's procedure. Whether he was entitled to have the simpler procedure of the first proviso followed is the question.

■■■ As we have seen, the detailed and more protective procedure set up in the second proviso must be followed with respect to employees who have permanent or indefinite appointments, who have finished their probationary or trial periods, and who are citizens of the United States. No reason appears for the procedure of the first proviso, which applies to "any civilian officer or employee", unless Congress intended it to cover employees who lack one or more of the three qualifications set forth in the second proviso. Therefore, the fact that the more protective procedure is prescribed for those who have finished their probationary periods strongly indicates that the simpler and less protective procedure of the first proviso was

intended to have application to those who have not completed the trial or probationary period. The term "any civilian officer or employee" in the first proviso is sufficiently broad and comprehensive to include a probationary employee. We think the internal evidence found in the statute, to which we have alluded, shows Congress intended the first proviso to extend to such an employee.

But, whether so or not, we are sure the President intended to extend the provisions of Public Law 733 to probationary employees when he issued Executive Order 10450.[1] The preamble of the Order includes this paragraph:

"Whereas the American tradition that all persons should receive fair, impartial, and equitable treatment at the hands of the Government requires that all persons seeking the privilege of employment or privileged to be employed in the departments or agencies of the Government be adjudged [sic] by mutually consistent and no less than minimum standards and procedures among the departments and agencies governing the employment and retention in employment of persons in the Federal service."

After this recital, the Order expressly provides that, in addition to the departments and agencies specified therein, Public Law 733 shall apply to all other departments and agencies of the Government. Then follows this section:

"Sec. 2. The head of each department and agency of the Government shall be responsible for establishing and maintaining within his department or agency an effective program to insure that *the employment and retention in employment*

of any civilian officer or employee within the department or agency is clearly consistent with the interests of the national security." [Emphasis supplied.]

Thus it seems that the Executive Order was intended to extend the provisions of the statute even to applicants for employment (although it is inaptly worded for that purpose). Certainly, then, it was intended to afford the protection of the minimum procedure of the first proviso to those who already have been actually put to work, but who are in the twilight zone of probation. In the exercise of his power to employ and discharge executive personnel, which is absolute unless limited by statute, the President can impose upon his subordinates the duty of observing statutory procedures in cases which the statute itself does not reach. This he has done in the Executive Order, even if it be thought Public Law 733 does not by its own terms apply to probationary employees.

Since Haynes was dismissed without observance of the procedure required by the Act under consideration, he was wrongfully discharged and is entitled to reinstatement as a probationary employee, with 44 days of his trial period to be served.[2] Upon remand, the District Court should enter an order to that effect.

When the appellee has obeyed the District Court's order, he may in his discretion summarily suspend Haynes and, after following the procedure outlined in the statute, terminate his employment if he is determined to be a poor security risk.[3]

Reversed and remanded.

---

1. Issued April 27, 1953, 18 Fed.Reg. 2489 (1953).

2. Haynes was dismissed April 9, 1954. His trial period would have ended May 24, 1954.

3. Cf. this excerpt from Senate Report No. 2158, July 25, 1950, 2 U.S.Cong.Serv. 3278, 3279, 81st Cong., 2d Sess. (1950),

which described the purpose of Public Law 733:

"Section 1 of the bill, as amended, provides that the heads of agencies listed therein have the authority to summarily suspend, and after following the procedures outlined in the section, if the facts so warrant may terminate the employment of such persons as are determined to be poor security risks. * * "

EDGERTON, Chief Judge.

I concur, with the exception of so much of the opinion as follows Bailey v. Richardson.