# CARLUCCI, SECRETARY OF DEFENSE, ET AL. *v.* DOE

No. 87–751.   Argued October 11, 1988—Decided December 6, 1988

*Michael K. Kellogg* argued the cause for petitioners. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Bolton, Deputy Solicitor General Cohen, Barbara L. Herwig,* and *Freddi Lipstein.*

*John G. Gill, Jr.,* argued the cause and filed a brief for respondent.*

JUSTICE WHITE delivered the opinion of the Court.

The issue in this case is whether the National Security Agency (NSA) invoked the proper statutory authority when it terminated respondent John Doe, an NSA employee. The Court of Appeals held that NSA did not—a decision with which we disagree. We first describe the statutes relevant to this case.

Section 7532 of Title 5 of the United States Code, on which the Court of Appeals relied, was passed in 1950 and reenacted and codified in 1966, as part of Chapter 75 of Title 5, the Chapter that deals with adverse actions against employees of the United States. See 5 U. S. C. § 7532. The section provides that the head of an agency "may suspend without pay" an employee when he considers such action "necessary in the interests of national security," see § 7532(a), and "may remove" the suspended employee if such action is "necessary or advisable in the interests of national security." § 7532(b). Subsection (c) of § 7532 specifies the procedural protections to which a suspended employee is entitled prior to removal.[1]

---

*David I. Shapiro, George Kaufmann, Peter W. Morgan, John A. Powell,* and *Steven R. Shapiro* filed a brief for the American Civil Liberties Union Foundation as *amicus curiae* urging affirmance.

[1] Title 5 U. S. C. § 7532(c) accords the suspended employee the following procedural rights before removal: "(A) a written statement of the charges against him within 30 days after suspension, which may be amended within 30 days thereafter and which shall be stated as specifically as security considerations permit; (B) an opportunity within 30 days thereafter, plus an additional 30 days if the charges are amended, to answer the charges and submit affidavits; (C) a hearing, at the request of the employee, by an agency authority duly constituted for this purpose; (D) a review of his case by the head of the agency or his designee, before a decision adverse to the

The National Security Agency Act of 1959 (1959 NSA Act) empowers the Secretary of Defense, or his designee, to establish NSA positions and appoint employees thereto "as may be necessary to carry out the functions of such agency." Note following 50 U. S. C. § 402. By virtue of the 1959 NSA Act, NSA employees who are not preferred eligible veterans are in the "excepted" service, hence not covered by the removal provisions of the Civil Service Reform Act of 1978. 5 U. S. C. §§ 7511–7513. Pursuant to the Defense Department Directive No. 5100.23 (May 17, 1967), as printed in App. in No. 86–5395 (CADC), p. 60, the Secretary delegated his 1959 NSA Act appointment authority to the NSA Director, who promulgated internal personnel regulations. See National Security Agency Central Security Service Personnel Management Manual 30–2 (PMM), Ch. 370 (Aug. 12, 1980), App. to Pet. for Cert. 36a. Chapter 370 of these regulations describes procedures for removing employees, and states generally that removal is permissible for "such cause as will promote the efficiency of the service," § 3–4, App. to Pet. for Cert. 39a. Dismissals proposed under Chapter 370 guarantee employees various procedural protections, such as 30-day advance notice, an opportunity to respond and to have legal representation, and a written final decision. Although Chapter 370 assigns to some employees the further right to appeal an adverse action to the Merit Systems Protection Board, nonveterans like Doe at NSA do not have this right; nor does Chapter 370 provide for a hearing or review by the Secretary of Defense.

In 1964, Congress amended the Internal Security Act of 1950 by passing an Act relating to "Personnel Security Procedures in the National Security Agency." 78 Stat. 168, 50 U. S. C. §§ 831–833 (NSA Personnel Security Procedures Act). Section 831 requires the Secretary of Defense to promulgate regulations assuring that no person will be employed

employee is made final; and (E) a written statement of the decision of the head of the agency."

or continue to be employed by NSA or have access to classified information unless such employment or access is "clearly consistent with the national security." The Secretary's determination is final. The Secretary's authority under § 831 has been delegated to the NSA Director and implemented through regulations, including a regulation requiring security clearance for employment at NSA. See PMM, Ch. 371, §§ 1–1, 1–3. Section 832(a) proscribes NSA employment to any person not subjected to a full field investigation and "cleared for access to classified information." In addition, Congress directs that boards of appraisal are to assist in appraising the loyalty and suitability of persons for access to classified information in those cases where the NSA Director doubts such suitability. § 832(b). Section 833(a) gives the Secretary authority to terminate the employment of any NSA officer or employee whenever he considers that action "to be in the interest of the United States" and determines that the procedures stated in other provisions of the law "cannot be invoked consistently with national security."

This case began in 1982 when John Doe, a cryptographic material control technician at NSA for 16 years, disclosed to NSA officials that he had engaged in homosexual relationships with foreign nationals. Doe was notified of his proposed removal pursuant to Chapter 370 of the PMM, which governs NSA's procedures for removal for cause. The notification letter of Virginia C. Jenkins, Director of Civilian Personnel, was dated November 23, 1982, and explained that Doe's "indiscriminate personal conduct with unidentified foreign nationals" makes impossible his continued—and essential to NSA employment—access to classified information. See App. in No. 86–5395 (CADC), p. 83. The notice also advised Doe of his adjudicatory rights to contest the decision, which rights he exercised through counsel, including in his answer the results of a psychiatric evaluation as to his security threat. Pursuant to 50 U. S. C. § 832(b), the NSA Director convened a board of appraisal, which ultimately con-

cluded that Doe's access to classified material was "clearly inconsistent with the national security." See App. in No. 5395 (CADC), p. 108. After a hearing before the Director, Doe was notified that his security clearance was being revoked. Because this clearance is a condition of NSA employment, the Director, pursuant to the authority delegated to him under the 1959 NSA Act, removed Doe. Relying on 5 U. S. C. § 7532, Doe then requested a hearing before the Secretary of Defense, claiming that the 1959 NSA Act does not authorize removals and that he could only be discharged by the Secretary after a hearing before that official or his designee. Both the Secretary and the Director replied that Doe's removal was "for cause" under Chapter 370 of the PMM and was not pursuant to the Secretary's § 7532 summary authority.

Doe brought suit in the District Court challenging his removal on constitutional and statutory grounds. He charged, *inter alia*, that the 1959 NSA Act's appointment authority delegated by the Secretary of Defense to the NSA Director does not include the authority to remove employees; hence NSA is required to apply 5 U. S. C. § 7532's termination procedures that guarantee NSA employees a preremoval hearing before the Secretary or his designee, the NSA Director. The District Court denied this argument and granted summary judgment for petitioners. Acknowledging that the NSA Director could have elected to proceed under either § 833 or § 7532 summary authority, the court held that the Director could *also* proceed under the authority provided by the 1959 NSA Act. *Doe* v. *Weinberger*, Civ. Action No. 85–1996 (DC, Apr. 25, 1986).

The Court of Appeals reversed as to the optional applicability of § 7532 and vacated the remainder of the District Court's decision. *Doe* v. *Weinberger*, 820 F. 2d 1275 (1987). The Court of Appeals was of the view that the chronology of congressional action indicates that § 7532, which predates the establishment of NSA, must control NSA employee dismiss-

als on national security grounds. The court acknowledged § 833's parallel summary removal scheme, but held that because the NSA Director disclaimed reliance on that section, remand to NSA for compliance with § 7532 was obligatory. We granted the Secretary's and Director's petition for certiorari. 485 U. S. 904 (1988).

The 1959 NSA Act authorizes the Secretary of Defense, or his designee, "to establish such positions, and to appoint thereto, without regard to the civil service laws, such officers and employees, in the National Security Agency, as may be necessary to carry out the functions of such agency." Note following 50 U. S. C. § 402. The Secretary, in turn, issued Defense Department Directive No. 5100.23 to delegate this appointment authority to the NSA Director, which authority was implemented by regulations covering both the hiring and removal of NSA employees. Although the 1959 NSA Act does not refer to termination, the Court has held, as a matter of statutory interpretation, that, absent a "specific provision to the contrary, the power of removal from office is incident to the power of appointment." *Keim* v. *United States*, 177 U. S. 290, 293 (1900); see also *Crenshaw* v. *United States*, 134 U. S. 99, 108 (1890); *Cafeteria Workers* v. *McElroy*, 367 U. S. 886, 896 (1961). Neither the Court of Appeals nor respondent questions this general proposition, nor have they shown that Congress expressly or impliedly indicated a contrary purpose in the 1959 NSA Act or its subsequent amendments.

The Court of Appeals, however, held that removals for national security reasons must occur under either 5 U. S. C. § 7532 or 50 U. S. C. § 833 and that because NSA disclaimed reliance on § 833, resort to § 7532 rather than NSA's for-cause removal regulations was mandatory. In our view, however, § 833 and § 7532 are not the exclusive means to remove NSA employees for national security reasons, but instead contemplate alternative recourse to NSA's ordinary removal mechanisms pursuant to the 1959 NSA Act. This discretionary as-

pect of §§ 833 and 7532 is manifest in both the express statutory language and also the legislative history of these provisions.

Section 833(a) states: "[N]otwithstanding sections 7512 and 7532 of title 5, or any other provision of law," the Secretary of Defense "may" remove an employee provided that he finds that "the procedures prescribed in other provisions of law that authorize the termination . . . cannot be invoked consistently with the national security." Petitioners correctly argue that where the for-cause procedures for removal under § 7512 or under the regulations adopted under the 1959 NSA Act do not jeopardize national security, recourse may, even must, be had to those other procedures.[2]

Section 7532 also is not mandatory. It provides that "[n]otwithstanding other statutes," the head of an agency "may" suspend and remove employees "in the interests of national security." This language declares that even though other statutes might not permit it, the Secretary may authorize removals pursuant to § 7532 procedures, rather than those governing terminations under those other laws. The Court of Appeals did not expressly address the permissive character of the section and construed the statute to require the Secretary, in all cases of removal based on national security, to resort to the removal procedures of § 833 or § 7532, notwithstanding other available statutory removal regimes.

---

[2] See Defense Department Directive No. 5210.45, p. 3 (May 9, 1964), as printed in App. in No. 86–5395 (CADC), p. 75 (emphasis added), which reads: "When the two conditions [in § 833—i. e., (1) other statutory removal provisions, which (2) will safeguard the national security—] do not exist, the Director, NSA shall, when appropriate, take action pursuant to other provisions of law, as applicable, to terminate the employment of a civilian officer or employee. The Director shall recommend to the Secretary of Defense the exercise of the authority of [§ 833] *only when* the termination of the employment of a civilian officer or employee cannot, because of paramount national security interests, be carried out under any other provision of law."

The Court of Appeals reached this conclusion by relying on two sentences from the House Report on the bill that ultimately became the predecessor to § 7532. These sentences state that the bill guarantees employees in various agencies, including the Department of Defense, the right to appeal to the head of the department in removal cases covered by § 7532.[3] This passage, however, does not indicate that § 7532 procedures are the *exclusive* means for removals on national security grounds or that § 7532 displaces the otherwise applicable removal provisions of the agencies covered by the section.[4] Read as the Court of Appeals understood them, the two sentences confound the permissive language of the statute and are inconsistent with other evidence from the legislative history.[5]

---

[3] The relevant sentences in the House Report state: "Under the present law, with respect to [the Departments of State and Defense,] the officer or employee who is suspended or terminated as a security risk is not entitled as a matter of right to an appeal to the head of the agency concerned. This legislation extends this appeal right to employees [of these agencies]." H. R. Rep. No. 2330, 81st Cong., 2d Sess., 3 (1950).

[4] The Court of Appeals also noted that 5 U. S. C. § 7533 provides that § 7532 does not "impair the powers vested in the Atomic Energy Commission [AEC]—or the requirement—that adequate provision be made for administrative review" of a termination by that Agency, yet does omit any similar exception for the pre-existing powers of any other agency. The Court of Appeals extrapolated that except in the case of the AEC, § 7532 supplants the removal authority of all agencies covered by the section in all cases involving national security. This conjecture extracts far more meaning than is warranted from the special mention by Congress that it intended to preserve the unique, expansive removal powers of the AEC, particularly in light of § 7532's language indicating that its applicability is permissive.

[5] Numerous congressional reports and statements indicate that § 7532 and its legislative antecedents were proposed as extraordinary, supplementary measures to enable the Secretary of Defense, and other agency heads responsible for United States security, to respond to rare, urgent threats to national security. See, *e. g.*, S. Rep. No. 2158, 81st Cong., 2d Sess., 2, 6 (1950); H. R. Rep. No. 2330, 81st Cong., 2d Sess., 2, 6 (1950); S. Rep. No. 1155, 80th Cong., 2d Sess., 2 (1948); Hearing on S. 1561 and

Congress enacted the § 7532 and § 833 summary removal measures to supplement, not narrow, ordinary agency removal procedures. Section 7532, like § 833, applies to a special class of national security cases, and authorizes summary suspension and unreviewable removal at the Secretary's personal initiative after a hearing of unspecified scope. The removal provisions apply only to an employee who has been suspended. An employee so removed is ineligible for employment elsewhere in the Government without approval by the Office of Personnel Management. See 5 U. S. C. § 7312. The Court has held that in light of its summary nature, Congress intended § 7532 to be invoked only where there is "an immediate threat of harm to the 'national security'" in the sense that the delay from invoking "normal dismissal procedures" could "cause serious damage to the national security." *Cole* v. *Young*, 351 U. S. 536, 546 (1956). Were § 7532 the exclusive procedure in this case and like cases, no national security termination would be permissible without an initial suspension and adherence to the *Cole* v. *Young* standard. We are unconvinced that Congress intended any such result when it enacted § 7532.

Indeed, when Congress passed the NSA Personnel Security Procedures Act in 1964, 50 U. S. C. §§ 831–833, Congress must have intended that § 7532 did not impose this restriction on the various affected agencies. The stringency would conflict with the provisions of that Act that require the Secretary to apply general security considerations in selecting NSA employees. Just as the Secretary need only find "inconsistency" with national security to reject an applicant seeking the necessary NSA clearance for classified information, see § 831, so too the boards of appraisal that assist in this determination are authorized to recommend denial or cancellation of such clearance if the NSA Director "doubt[s]" that clearance is consistent with national security. See

S. 1570 before the Subcommittee of the Senate Committee on Armed Services, 80th Cong., 2d Sess., 2–3, 4 (1948).

§ 832(b). The Secretary, in turn, must adhere to a board's recommendation unless he makes the affirmative finding that clearance is in the national interest. See *ibid*. Under the construction adopted by the Court of Appeals, however, the revocation of a security clearance ordered by NSA pursuant to a board's recommendation will not suffice for the dismissal mandated by § 832(a), but rather would require further review by the Secretary under the more stringent standard imposed by § 7532.

The Court of Appeals was of the view that its construction of § 7532 is necessary to provide employees sought to be removed on national security grounds with procedures equivalent to those provided by that section. This approach assumes that NSA's ordinary clearance revocation and for cause dismissal procedures are less protective than those guaranteed by § 7532. This is a doubtful proposition, to say the least. The section, as we have said, provides for summary suspension without pay, affords a hearing of undefined scope before the agency head, and attaches to a removal order the sanction that the employee is ineligible for other governmental employment. NSA's for-cause removals neither are preceded by suspension nor entail a collateral bar from federal employment. In this case, Doe was on the payroll until removed, and the record does not indicate that the hearing Doe received, or the other procedural protections accorded to him, were inferior to those that would have been available under § 7532. Indeed, in *Department of the Navy* v. *Egan*, 484 U. S. 518, 533 (1988), we rejected the argument that § 7532 would have provided more protections than the Navy's ordinary for-cause removal procedures. More significantly, the Court of Appeals' view that Congress enacted § 7532 to extend new protections to all employees sought to be dismissed on national security grounds runs counter to explicit congressional statements that the legislation was proposed "to increase the authority of the heads of Government departments engaged in sensitive activities to

summarily suspend employees considered to be bad security risks, and to terminate their services if subsequent investigation develops facts which support such action." S. Rep. No. 2158, at 2; see also H. R. Rep. No. 2330, at 2.

We thus agree with the conclusion of the Merit Systems Protection Board in a similar case that "section 7532 is not the exclusive basis for removals based upon security clearance revocations," *Egan* v. *Department of the Navy*, 28 M. S. P. R. 509, 521 (1985), and with the Court of Appeals for the Federal Circuit that "[t]here is nothing in the text of section 7532 or in its legislative history to suggest that its procedures were intended to preempt section 7513 procedures whenever the removal could be taken under section 7532. The language of section 7532 is permissive." *Egan* v. *Department of the Navy*, 802 F. 2d 1563, 1568 (1986).

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.[6]

*So ordered.*

---

[6] Respondent defends the result reached by the Court of Appeals on the alternative ground that NSA violated its own regulations in removing him. That claim, as well as others argued to the Court of Appeals, was not passed on by that court, and we prefer to leave the matter to the Court of Appeals in the first instance.