John DOE, Appellant,

v.

Richard B. CHENEY, Secretary of Department of Defense, et al., Appellees.

No. 86–5395.

United States Court of Appeals, District of Columbia Circuit.

Sept. 12, 1989.

Leonard P. Bienvenu and John G. Gill, Jr., Washington, D.C., were on the brief, for appellant.

Freddi Lipstein, Attorney, Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and Barbara L. Herwig, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before WALD, Chief Judge, and EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

This case is before us on remand from the Supreme Court. The questions presented are whether the National Security Agency (NSA), in removing appellant John Doe from his job as a cryptographic technician, violated its own regulations and infringed Doe's constitutional rights.

This litigation began in 1985 when Doe brought suit in federal district court against Secretary of Defense Caspar Weinberger and Lieutenant General William E. Odom, Director of NSA. Doe claimed that NSA's decision to withdraw his access to classified information and to terminate his employment violated his statutory and constitutional rights. After the district court's award of summary judgment to NSA, a panel of this court reversed and held that Doe was entitled to the procedural protections spelled out in 5 U.S.C. § 7532 for NSA employees removed for national security considerations.

The Supreme Court reversed. *Carlucci v. Doe*, —— U.S. ——, 109 S.Ct. 407, 102 L.Ed.2d 395 (1988). In its decision, the Court held that in cases involving dismissals for national security reasons, § 7532 procedures are neither mandatory nor exclusive; as a result, NSA was not required to afford Doe the process mandated by § 7532. The Court remanded the case for decision of Doe's remaining claims that NSA violated its own regulations in removing him and that his constitutional rights had been infringed by the process. 109 S.Ct. at 414 n. 6.

## I. STATUTORY AND REGULATORY FRAMEWORK

In order to clarify the past course of events and to provide the necessary background for the legal issues before us, we begin with an overview of the rather complex statutory and regulatory framework for removal of NSA employees. Under the National Security Agency Act of 1959, 50 U.S.C. § 402 note, the Secretary of Defense or his designee is empowered to establish NSA positions and to appoint employees thereto "as may be necessary to carry out the functions of such agency." Under the Act, NSA employees like Doe who are not preferred eligible veterans are not covered by the removal provisions of

the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7511–13. Instead, regulations promulgated by the NSA Director, the designee of the Secretary of Defense, Dep't of Defense Directive No. 5100.23 (May 17, 1967), Joint Appendix (J.A.) at 60, govern the removal of such employees. Chapter 370 of these regulations provides procedures to be applied when removal is "for such cause as will promote the efficiency of the service." National Security Agency Central Security Service Personnel Management Manual 30–2, Ch. 370, § 3–4 (Aug. 12, 1980) [hereinafter cited as Ch. 370], J.A. at 67. Although chapter 370 guarantees various procedural protections, including notice, opportunity to answer, and the right to representation, it does not provide for a hearing or review by the Secretary of Defense or for appeal by non-veterans to the Merit Systems Protection Board. *Id.*, §§ 3–6, 3–8, J.A. at 68–69. Chapter 370 also states explicitly that it "does not apply to a suspension or removal taken in the interest of national security." *Id.*, § 3–2a, J.A. at 67.

The 1964 NSA Personnel Security Procedures Act, 50 U.S.C. §§ 831–35, requires the Secretary of Defense to promulgate regulations assuring that no person will be employed by NSA or will have access to classified information unless such employment or access is "clearly consistent with the national security." 50 U.S.C. § 831. Chapter 371 of NSA personnel management regulations, promulgated in part pursuant to § 831, includes a regulation requiring security clearance for employment at NSA. National Security Agency Central Security Service Personnel Management Manual 30–2, Ch. 371, §§ 1–1, 1–3 (July 1976) [hereinafter cited as Ch. 371], J.A. at 228. Under 50 U.S.C. § 832(a), all NSA employees must be subjected to a "full field investigation" and must be "cleared for access to classified information." When the NSA Director "determines that there is a doubt" that an employee's access to classified information "would be clearly consistent with the National Security," the Director may appoint a board of appraisal to assist him in determining the employee's

loyalty and suitability. 50 U.S.C. § 832(b). Section 834 defines classified information as "information which, for reasons of national security, is specifically designated by a United States Government agency for limited or restricted dissemination or distribution."

Under 50 U.S.C. § 833(a), the Secretary of Defense may terminate an NSA employee summarily, without allowing recourse to the procedures of any other statute, if those procedures "cannot be invoked consistently with the national security." The Secretary's determinations are final. Ch. 371, § 2–3, J.A. at 230–31. 50 U.S.C. § 835 provides that all uses or exercises of authority granted by §§ 831–35 are exempt from the Administrative Procedure Act.

5 U.S.C. § 7532 allows the head of an agency to suspend an employee "in the interests of national security."[1] Although the suspended employee may submit affidavits to explain why he should be reinstated, the agency head's determination is final. Section 7532 also allows an agency head to remove a suspended employee, provided that after suspension but before removal the employee receives a written statement of the charges against him, an opportunity to respond, a hearing, review, and a written statement of final decision. Chapter 371 of the NSA regulations incorporates these procedures and entitles an NSA employee dismissed for national security reasons pursuant to them to a final determination by the Secretary of Defense. Ch. 371, § 2–2, J.A. at 230.

## II. FACTUAL CONTEXT

With that statutory background in mind, we next review the course of events in this proceeding. In 1982, John Doe, a cryptographic material control technician at NSA for 16 years, revealed to NSA officials that he had engaged in homosexual relationships with foreign nationals. Doe offered this information during an NSA investigation into illegal drug use by another NSA employee. Pursuant to chapter 370 of

---

**1.** In a memorandum of May 23, 1988, President Reagan designated NSA as an "agency" for the purposes of § 7532. 53 Fed.Reg. 26023 (July 11, 1988).

NSA personnel regulations, governing removal for cause, Virginia Jenkins, NSA's Director of Civilian Personnel, informed Doe in November 1982 that NSA proposed to terminate his access to sensitive compartmented information (SCI)[2] and to dismiss him on the grounds that his "indiscriminate personal conduct with unidentified foreign nationals raises grave uncertainties about your judgment, discretion, and personal reliability." As a result, Jenkins was

> unable to find that your [Doe's] continued access to sensitive compartmented information is clearly consistent with the national security. You fail to meet the statutory standards for employment in a critical and sensitive position that require [sic] access to highly classified information. Therefore, I am proposing that you be removed from your position with the National Security Agency.

J.A. at 82-83.

Jenkins' letter advised Doe of his right to appeal, which he exercised through counsel and through a voluntary psychiatric evaluation. The NSA Director referred Doe's case to a board of appraisal. J.A. at 100. The board ultimately concluded that Doe's continued access to classified information was "clearly inconsistent with the national security." While noting Doe's homosexual/bisexual preference, the board said that factor was not material to its decision. J.A. at 108. After a hearing with Doe, the NSA Director accepted the board's recommendation that Doe's access to classified information was not clearly consistent with the national security and he confirmed Doe's proposed removal. This decision was communicated to Doe in February 1984. J.A. at 193. NSA subsequently denied Doe's request for a hearing under 5 U.S.C. § 7532. J.A. at 220-21, 224-25.

At this point, Doe brought suit in district court. He maintained in his complaint that NSA unreasonably and unlawfully relied on his own statements regarding his homosexual past in order to discontinue his clearance and remove him. J.A. at 4. The court held that regardless of whether Doe's termination was based solely on his acknowledged homosexual conduct, NSA's decisions to withdraw Doe's access to SCI and to terminate him were rationally related to a permissible purpose and were, therefore, lawful. *Doe v. Weinberger*, No. 85–1996, slip op. at 3 (D.D.C. Apr. 25, 1986) (memorandum), J.A. at 34. The court determined that in removing Doe pursuant to chapter 370, the NSA Director acted within his authority and in a manner that accorded Doe the procedural safeguards due him. *Id.* at 4, J.A. at 35. According to the court, NSA did not err by refusing to provide Doe with the process required by 50 U.S.C. § 833 and 5 U.S.C. § 7532 in cases of summary dismissals for national security reasons. *Id.* at 5, J.A. at 36. The court further found Doe's due process claims meritless. *Id.* at 3-4, J.A. at 34-35.

In reversing the district court's grant of summary judgment, we held that NSA improperly bypassed the review and removal procedures of 5 U.S.C. § 7532. *Doe v. Weinberger*, 820 F.2d 1275 (D.C.Cir.1987). We found that unless the Secretary of Defense determines in a given case that the § 7532 procedures are inconsistent with national security, § 7532 governs the removal of all NSA employees. *Id.* at 1282. Because the government acknowledged that a § 7532 hearing for Doe would not undermine national security, we concluded that Doe was legally entitled to such a hearing. We did not consider Doe's constitutional claims on the grounds that until he received his § 7532 hearing, he had not exhausted his administrative remedies. *Id.* at 1283.

In reversing our decision, the Supreme Court determined that § 7532, as well as § 833, are discretionary removal mechanisms in cases involving dismissals for national security reasons: NSA is not required, however, to apply either procedure and can act under ordinary dismissal procedures whenever it wishes. 109 S.Ct. at

---

**2.** SCI is the name for information and materials requiring special controls and handling within the United States Intelligence Community. Director of Central Intelligence Directive 1/14, Appellee's Brief (Govt.Br.) at 1a, 3a.

411. In addition, the Court affirmed the general principle that for cause dismissals afford the employee greater protections than the summary procedures of § 7532 or of § 833. Doe's own experience, according to the Court, bore out this generalization. 109 S.Ct. at 413.

### III. NSA's ALLEGED REGULATORY VIOLATIONS

We now turn to the first of the two questions that must be dealt with on remand—whether NSA violated its own regulations in its dismissal of Doe. We note initially that this claim of Doe raises questions of reviewability. If the reviewability barrier can be overcome, Doe's claim requires resolution of an issue that none of the earlier opinions in this case dealt with explicitly—whether Doe's removal was "for cause," as NSA contends, or whether his removal was an action taken by NSA in the interests of national security, as Doe himself maintains. The answer to this question determines which set of regulations NSA was required to follow.

#### A. *Nonreviewability*

■ The first question that we must confront in this case is whether NSA's decision to revoke Doe's security clearance and to dismiss him is reviewable. Our reading of the relevant statutes and regulations suggests that while the access revocation is nonreviewable, the dismissal is reviewable.

50 U.S.C. § 835 provides that the Administrative Procedure Act "shall not apply to the use or exercise of any authority granted by this subchapter." "Use or exercise of ... authority" refers by implication to both termination of security clearances and dismissals for national security reasons. At issue, then, is whether the nonreviewability provided by § 835 governs either Doe's clearance revocation or his dismissal, or both. We consider the two matters in turn.

#### 1. *Clearance Revocation*

Section 831 states that the Secretary of Defense

shall prescribe such regulations relating to continuing security procedures as he considers necessary to assure—

(1) that no person shall be employed in, or detailed or assigned to, the National Security Agency ... or continue to be so employed, detailed, or assigned; and (2) that no person so employed, detailed, or assigned shall have access to any classified information;

unless such employment, detail, assignment, or access to classified information is clearly consistent with the national security.

50 U.S.C. § 832(a), moreover, requires that all NSA employees be "cleared for access to classified information in accordance with the provisions of this subchapter." Under § 832(b), a board of appraisal appointed by the NSA Director "shall appraise the loyalty and suitability of persons for access to classified information, in those cases in which the Director of the Agency determines that there is a doubt whether their access to that information would be clearly consistent with the national security." In addition, "[n]o person shall be cleared for access to classified information, contrary to the recommendations of any such board," absent a determination by the Secretary of Defense or his designee that such access is in the national interest. 50 U.S.C. § 832(b).

Chapter 371, promulgated in part pursuant to §§ 831–35, "prescribes policies and procedures governing actions to limit access to classified information ... for reasons of national security." Ch. 371, § 1–1, J.A. at 228. Chapter 371 further provides that:

The Director shall refer to a duly constituted Board [of Appraisal] those cases in which he determines that there is a doubt as to an employee's eligibility for access to classified information. Authority to refer such cases has been delegated to the Assistant Director for Personnel and Security. The Board shall proceed in accordance with the provisions of NSA Regulation No. 30–4.

*Id.*, § 1–5, J.A. at 229.

Regulation 30–4 "establishes boards of appraisal ... as required by Public Law

88–290 [50 U.S.C. §§ 831–35.]" NSA Regulation No. 30–4, § I–1 (June 22, 1964) [hereinafter cited as NSA Reg. 30–4], J.A. at 77. In addition, Department of Defense Directive 5210.45 states that its purpose "is to prescribe policies and procedures to implement Public Law 88–290...." Dep't of Defense Directive No. 5210.45, § I–1 (May 9, 1964) [hereinafter cited as DoD Dir. 5210.45], J.A. at 73. Both documents state that the NSA Director shall refer to these boards of appraisal "those cases in which he determines that there is a doubt as to [the] eligibility for access to classified information of an employee or person assigned or detailed to [NSA]." DoD Dir. 5210.45, § IV–B, J.A. at 74; NSA Reg. 30–4, § II–4, J.A. at 78. Regulation 30–4 goes on to mandate that "[n]o person shall be cleared for access to classified information contrary to the recommendation of a board" except on authority of the NSA Director or, upon referral, of the Secretary of Defense. NSA Reg. 30–4, § II–6, J.A. at 78. Directive 5210.45 uses similar language but refers to "access or continued access" and to "Agency classified information." DoD Dir. 5210.45, § IV–C, J.A. at 74–75.

NSA's revocation of Doe's security clearance followed these regulations. NSA's 1982 letter to Doe proposing to remove his access to SCI and to terminate his employment stated that NSA considered his continued access to classified information not "clearly consistent with the national security." The letter concluded that Doe's contacts with foreign nationals raised doubts about his judgment and, consequently, about his suitability for access to SCI. J.A. at 82–83. Subsequently, the NSA Director appointed a board of appraisal pursuant to Regulation 30–4. J.A. at 99. The board determined that Doe did not meet the minimum standards for access to SCI, J.A. at 106–08, as laid out in Director of Central Intelligence Directive 1/14 (Sept. 1, 1983), Govt. Br. at 1a, which is intended to apply to all United States Government personnel with access to SCI, id. at 3a. In the wake of this finding, Regulation 30–4 and Directive 5210.45 required the NSA Director or the Secretary of Defense either to revoke Doe's SCI clearance or to make a finding that Doe's continued access to SCI was in the interests of national security. NSA Reg. 30–4, § II–6, J.A. at 78; DoD Dir. 5210.45, § IV–C, J.A. at 74–75. Since the Regulation and Directive were both implemented pursuant to §§ 831–35 and the NSA Director explicitly accepted the board's recommendation, J.A. at 193, the Director's revocation of Doe's clearance is an "exercise of ... authority granted by [§§ 831–35]," 50 U.S.C. § 835.[3] Section 835 makes such decisions unreviewable. Thus, we are precluded from reviewing NSA's revocation of Doe's access to SCI.[4]

### 2. *Employment Termination*

█ We come now to the reviewability of NSA's decision to terminate Doe's employment. The parties agree that Doe was not removed under § 833. Appellant's Brief (Doe Br.) at 18 n. 6; Govt. Br. at 13; J.A.

---

**3.** Both parties reached this conclusion in their original briefs. Appellant's Br. at 33, Appellee's Br. at 19–20.

**4.** Our conclusion that NSA's access revocation decision is fully non-reviewable is readily distinguishable from the Ninth Circuit's decision in *Dubbs v. CIA*, 866 F.2d 1114 (9th Cir.1989), that the CIA's denial of SCI clearance to Dubbs is not reviewable for arbitrariness or capriciousness but may be reviewable for agency noncompliance with its own regulations. *Id.* at 1121. *Dubbs* and *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), from which *Dubbs* drew support, both involved actions arising under § 102(c) of the National Security Act of 1947, 50 U.S.C. § 403(c). Unlike NSA action pursuant to 50 U.S.C. §§ 831–35, CIA action under § 102(c) is not exempted from the Administrative Procedure Act. Rather, only the exemptions to review contained in the APA itself—review precluded by statute, or agency action committed to agency discretion by law, 5 U.S.C. § 701(a)(1), (2)—exempt CIA decision pursuant to § 102(c) from judicial review. Thus, as *Dubbs* and *Webster* suggest, had Dubbs' claims and *Webster* Doe's non-constitutional claims been based on the premise that the CIA violated its own regulations, those claims might well have been reviewable. *Webster*, 108 S.Ct. at 2053 n. 8; *Dubbs*, 866 F.2d at 1121 n. 9. By contrast, since 50 U.S.C. § 835 flatly exempts the "exercise of any authority" pursuant to §§ 831–35 from the APA, no aspect of Doe's claims that his SCI access termination was improper is reviewable.

at 220. Consequently, the only possible legal bases for his removal are regulations, promulgated pursuant to §§ 831–35, governing nonsummary dismissals; chapter 371, as it incorporates the provisions of § 7532; or chapter 370. The Secretary of Defense has not, however, issued regulations under §§ 831–32 governing nonsummary dismissals.[5] In fact, Directive 5210.-45 states that when the conditions for summary removal under § 833 do not exist, the NSA Director "shall, when appropriate, take action pursuant to other provisions of law, as applicable, to terminate the employment of a civilian officer or employee." DoD Dir. 5210.45, § V–B, J.A. at 75. Thus, NSA *must* have removed Doe under either chapter 371/§ 7532 or chapter 370, neither of which is governed by a nonreviewability clause. We conclude, therefore, that NSA's decision to remove Doe is reviewable and that we must reach the merits of Doe's claim that NSA violated or misapplied its regulations in removing him.

The Supreme Court's decision in *Carlucci* is consistent with this conclusion. In noting the "discretionary aspect of § 833 and § 7532," the Court determined that § 833 and § 7532 "are not the exclusive means to remove NSA employees for national security reasons, but instead contemplate alternative recourse to NSA's ordinary removal mechanisms pursuant to the 1959 NSA Act." 109 S.Ct. at 411. These mechanisms are codified in chapter 370. *Carlucci* in no way forecloses the determination that we must now make—whether Doe was removed for cause under chapter 370 or in the interests of national security under § 7532 and chapter 371.

### B. *Merits of Doe's Removal Claim*

#### 1. *General Considerations*

■ NSA asserts that Doe was dismissed for cause because he failed to meet the statutory standard of employment—eligibility for access to SCI. Govt.Br. at 17. For that reason, it contends, Doe's removal was processed in adherence with chapter 370 of the NSA regulations, which governs

for cause removals. NSA points to the letter informing Doe of his proposed removal, which specifically stated that notice was being provided to Doe pursuant to chapter 370. Govt.Br. at 24 (citing J.A. at 82). Doe claims, however, that he was dismissed for national security reasons—and therefore was entitled to procedures laid out in 5 U.S.C. § 7532 as incorporated in chapter 371—because the letter removing him stated that his "access to classified information is not clearly consistent with the national security." J.A. at 193. Doe also notes that the NSA Director's internal memorandum detailing the reasons for his removal stated that Doe is "a potential security risk" and that his behavior invited a "risk of security exploitation." Doe Br. at 12 (citing J.A. at 191–92). Doe contends that because chapter 370 on its face is not applicable to national security dismissals, NSA violated its own regulations by not providing for a final determination by the Secretary of Defense, to which Doe would have been entitled under chapter 371. Doe Br. at 12–14.

■ The Supreme Court's decision in *Carlucci* bears out NSA's position. *Carlucci* determined that § 7532 was intended to apply primarily to suspended employees in cases involving " 'an immediate threat of harm to the "national security" ' " in the sense that the delay from invoking 'normal dismissal procedures' could 'cause serious damage to the national security.' " *Carlucci*, 109 S.Ct. at 412 (quoting from *Cole v. Young*, 351 U.S. 536, 546, 76 S.Ct. 861, 868, 100 L.Ed. 1396 (1956)). This language indicates that the procedures of § 7532—and, by implication, of chapter 371—are available only when NSA has suspended an employee, with the intention of removing him, in order to respond to an immediate threat to national security. In such a case, normal for cause dismissal procedures could cause serious damage to national security.

*Carlucci* added another step to the process, begun in *Cole*, of placing limits on the

---

5. Had such regulations existed, removal pursuant to them would have been unreviewable because of § 835, which by its terms governs any exercise of authority under §§ 831–32.

definition of "national security" in the context of employee dismissals. In *Cole*, the Court considered the meaning of the term "national security" in the 1950 Act that vested in the heads of specified government agencies summary suspension and unreviewable dismissal powers over civilian employees whose jobs involved sensitive national security matters. The Court there explicitly chose not to construe "national security" "in a sense so broad as to be involved in *all* activities of the Government, for then the relationship to the 'national security' would follow from the very fact of employment." *Cole*, 351 U.S. at 543, 76 S.Ct. at 866. Rather, it said, "national security" "relates only to those activities which are directly concerned with the Nation's safety, as distinguished from the general welfare." *Id.* Thus, *Carlucci's* reading of "national security" to refer to a threat of immediate harm leads to a further narrowing of the range of suspension or removal situations that genuinely fall under the rubric of "national security."

In the present case, the passage of some fifteen months from the original letter notifying Doe of his proposed removal to the actual removal suggests that NSA did not consider him to pose an immediate threat to national security. The NSA Director based his decision to remove Doe on the arguments set forth by the board of appraisal that Doe's access to classified information was inconsistent with national security. J.A. at 193. The board's decision about Doe's "suitability" resulted from its finding that "a risk exists concerning the stability of [Doe's] character and discretion." J.A. at 106. The board supported that conclusion with reference to the alleged illegal drug use of one of Doe's companions, Doe's allegedly poor judgment vis-a-vis security in view of his liaisons with foreign nationals, and his supposed lack of enduring relationships. J.A. at 106–07. These considerations suggest the board's long-term concerns about Doe's suitability for access to classified information and do not indicate that the board believed that Doe's security clearance posed an immediate threat to national security. Thus, in view of *Cole v. Young* and *Carlucci v.*

*Doe*, NSA acted properly in dismissing Doe according to standard for cause procedures, rather than according to national security dismissal procedures.

■ A further legal flaw in Doe's position is his presumption that NSA's failure to follow chapter 371 deprived him of "very important procedural benefits." Doe Br. at 17. Doe's argument is based on the assumption that he was dismissed in the interests of national security; as a result, he claims that Executive Order 10450, which requires agency heads to apply the procedures of § 7532 to all employees whose retention of employment "may not be clearly consistent with national security," Exec. Order No. 10,450, 3 C.F.R. 936, 937 (1949–53), entitles him to § 7532 procedures as well. Doe supports his contention by pointing to this court's holding in *Haynes v. Thomas*, 232 F.2d 688 (D.C.Cir.1956), that the Executive Order properly extended the availability of § 7532 procedures to employees not contemplated by the terms of the statute itself. *Id.* at 692. We consider Doe's claim concerning deprivation of § 7532 benefits to be without merit.

In the first place, we disagree with Doe's assumption that Executive Order 10450 even applies to him. The Order mandates § 7532 procedures when information comes to an agency's attention that an employee's continued employment with the agency "may not be clearly consistent with the interests of the national security." We have found, however, that NSA terminated Doe's employment for cause of promoting NSA's efficiency. Thus, by its terms, the Order is not germane to Doe's situation.

Moreover, in *Carlucci*, the Supreme Court reaffirmed its decision in *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), where the Court rejected the view that "§ 7532 would have provided more protections than the Navy's ordinary for cause removal procedures." *Carlucci*, 109 S.Ct. at 413 (citing *Egan*, 108 S.Ct. at 820, 826–27). Indeed, for cause removal procedures appear to provide more protection than § 7532. Chapter 371 incorporates the structure of § 7532, treating the Secretary of Defense

as the head of NSA for final review purposes. Ch. 371, § 2–2, J.A. at 230. Doe places significant emphasis on his claimed right to a final written statement by the Secretary of Defense. Doe Br. at 15, 17–18. While review by the Secretary is obviously of some import, it does not seem to outweigh Doe's rights under chapter 370 to full-pay status pending the outcome of his removal case; notice of the reasons for denial of access, rather than notice only to the extent that the agency head determines that national security considerations permit; and future government employment without consultation with the Office of Personnel Management, 5 U.S.C. § 7312. Thus, to the extent relevant, Doe's insistence on chapter 371 procedures seems both logically flawed and inconsistent with Supreme Court precedent.

### 2. Doe's Further Arguments

Doe presents several additional arguments to demonstrate that NSA wrongfully applied the chapter 370 regulations when it should have applied chapter 371 instead. He draws support from the language of chapter 370, the Supreme Court's assumptions in *Carlucci,* and the convening of a board of appraisal to deal with his situation.

Doe argues that the for cause procedures of chapter 370 are by their own terms inapplicable to national security-based dismissals.[6] Doe Br. at 18–20; Doe Reply Br. at 11. The interpretation advanced in *Carlucci* that such removals require an immediate threat of harm suggests that chapter 370 procedures are unavailable only if they could cause serious damage to national security. 109 S.Ct. at 412. As we have seen, the record supports NSA's assertion that Doe was dismissed because of long-term unsuitability for access to SCI and not because he posed an immediate security threat. Thus, the "national security" exception to chapter 370 is no more applicable to Doe than are the provisions of 5 U.S.C. § 7532. Doe's submission that the exception to chapter 370

"totally defeats NSA's case," Doe Reply Br. at 11, is, therefore, without merit.

Doe further contends that the Supreme Court opinion in *Carlucci* "can be read only as assuming that Doe's termination was one in the interest of national security." Doe Reply Br. at 9. Although Doe may be correct about the Court's assumptions, Doe admits that "Certiorari [w]as [g]ranted on [o]nly the [n]arrow [i]ssue of [w]hether the [p]rocedures of 5 U.S.C. 7532 [w]ere [m]andated in [t]his [c]ase." *Id.* at 5. The Court's determination that § 7532 procedures were not mandated for Doe is not at all inconsistent with our separate finding now—on an issue that was not before the Supreme Court—that Doe's dismissal was for cause and therefore did not implicate § 7532.

Finally, Doe argues that by its actions NSA in fact utilized the national security criteria of chapter 371 rather than the for cause criteria of chapter 370. *Id.* at 11. He claims first that NSA never applied the "efficiency of the service" standard of chapter 370. Our discussion above indicates that this claim is too weak to provide a basis for relief. Although none of the communications by NSA to or about Doe employed the language of "efficiency," the thrust of the board of appraisal's findings concerns Doe's judgment and his suitability for access to SCI. Clearly, Doe could not promote NSA's efficiency if he did not have access to the confidential information necessary for his job.

As an additional support for his argument that NSA actually was applying chapter 371, as it incorporates § 7532, Doe points to NSA's use of a board of appraisal, provided for under chapter 371 but not under chapter 370. Doe Br. at 20. NSA responded that the board provided "an additional protection voluntarily accorded [Doe]" and did not require final determination by the Secretary of Defense as provided by chapter 371. Govt.Br. at 30. Unlike security clearance revocations, employment dismissals do not require the NSA Director to call upon boards of appraisal. 50 U.S.C.

---

**6.** Section 3–2a of chapter 370 states, "This section does not apply to a suspension or removal

taken in the interest of national security." J.A. at 67.

§ 832(b). It is incongruous for Doe to maintain that NSA's use of the board entitled him to procedural protection that as a matter of law is less substantial than the safeguards he received under chapter 370. *See Carlucci*, 109 S.Ct. at 413.

### 3. *Doe's Claim of Insufficient Notice*

■ The bulk of Doe's arguments discussed above are based on the presumption that NSA inappropriately applied the regulations of chapter 370 rather than the regulations of chapter 371. Doe additionally claims, however, that NSA violated chapter 370 by failing to provide proper notice. Doe Br. at 20–22; Doe Reply Br. at 3–5. We now consider this contention.

Chapter 370 entitled Doe to written notice for his removal "stating the specific reasons for the proposed action." Ch. 370, § 3–5a, J.A. at 67.[7] Doe maintains that NSA denied him notice on the grounds that NSA's letter informing him of his proposed removal and NSA's final decision memorandum were inconsistent. The former referred to four liaisons with foreign nationals as evidence of Doe's "willful disregard of agency security regulations," J.A. at 82, while the latter, which Doe never saw until litigation commenced, referred to his "admitted record of well over 100 other similarly casual (and hence indiscriminate (and promiscuous)) homosexual acts." J.A. at 192. Doe argues that NSA never gave him reason to suspect that his lifestyle violated NSA regulations and would provide cause to withdraw his access to SCI. Doe Br. at 21.

We do not find Doe's claim persuasive. The letter informing Doe of his proposed removal referred to his "indiscriminate involvement with foreign nationals" and noted NSA's "grave uncertainties" about Doe's "judgment, discretion, and personal reliability." J.A. at 82–83. The board of appraisal's report, which Doe received, focused on Doe's stability and emotional maturity, rather than on his homosexuality. J.A. at 106–08, 118. NSA's decision memorandum referred to Doe's "indiscriminate pattern of activity," J.A. at 192, about which the NSA Director learned in part as a result of Doe's voluntary psychiatric examination and his rebuttal evidence. Chapter 370 specifically permits NSA's Director to consider the employee's reply in reaching his final termination decision. Ch. 370, § 3–7, J.A. at 68. Thus, NSA's evidence and arguments went directly to the issues of Doe's stability and maturity, which NSA had raised in the original letter proposing his removal. Although Doe complained that he was never shown NSA's decision memorandum, access to that document would not have provided any further protection: Doe was afforded a full opportunity, which he exercised, to respond to the removal proposal. Thus, Doe's contention that NSA did not comply with the notice requirements of chapter 370 is without merit.

### IV. CONSTITUTIONAL ISSUES

We now come to the constitutional claims raised by Doe. Doe contends that the law of the case doctrine requires us to remand the dispute over these claims to the district court; as a result, he presents no arguments on their merits. Doe Reply Br. at 14–15. NSA, on the other hand, maintains that on remand we can and should consider Doe's constitutional claims and that we should find them meritless. Govt.Br. at 31–36.

### A. *Jurisprudential Considerations*

■ We consider first the "law of the case" issue. Doe contends that this doctrine, which holds that "a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation,"

---

7. Chapter 371 also contains a notice requirement, but NSA need state the reasons for its actions only "as specifically as security considerations permit." Ch. 371, § 2–2b(1), J.A. at 230. Doe maintains this language is "similar" to the language of chapter 370. Doe Br. at 20 n. 7. The differences are more important than the similarities, however, because the language of chapter 371 provides NSA with substantial leeway not to inform the terminated employee of the reasons for his removal. Thus, chapter 370 provides an important procedural safeguard that Doe did not recognize.

IB J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice,* ¶ 0.404[1] (2d ed. 1988), prevents us from ruling on his constitutional claims. Doe appears to maintain that, by virtue of the "law of the case," our previous decision vacating the district court's dismissal of his constitutional challenges requires that we remand these issues to the district court. Doe Reply Br. at 15. In his original brief, Doe also suggested that, in any event, the district court did not properly review the alleged infringements to his constitutional interests and that, as a result, our consideration would be premature. Doe Br. at 26; Appellant's Br. at 29–33.

■ These arguments are problematic for several reasons. First, because the Supreme Court heard this case on certiorari and reversed, the mandate in our original decision never took effect. *See* 1B Moore, Lucas, Currier, *Moore's Federal Practice,* ¶ 0.404[5.–3]. Thus, the district court's determination concerning Doe's constitutional claims remains unvacated.

Furthermore, in its opinion in this case, the district court stated that

> The Court also finds that plaintiff's due process claims are without merit because plaintiff, as an employee excepted from the protections of the Civil Service Reform Act had no property interest in his job, and because the withdrawal of plaintiff's access to SCI and the resulting termination of employment, did not infringe any liberty interest.

*Doe v. Weinberger,* No. 85–1996, slip op. at 3–4, J.A. at 34–35. Thus, the district court did consider the liberty and property interest claims, albeit in a summary manner, and dismissed them.[8] Doe's cross-motion for summary judgment to the trial court,

J.A. at 30–31, indicates that he sought the district court's determination of the merits of those claims; he cannot now maintain that the court did not deal with his constitutional challenges properly. As a result, we should be allowed to review Doe's constitutional claims.

■ In general, constitutional claims are judicially reviewable unless Congress clearly expresses its intent to preclude review. *Webster v. Doe,* 108 S.Ct. at 2053. Appellant does not contend that Congress has rendered his liberty interest complaint unreviewable, and the relevant statutes and regulations contain no suggestion that Congress intended constitutional claims arising from NSA dismissals to be unreviewable. Although *Webster* indicated that constitutional claims arising out of an individual discharge are reviewable by a district court, *id.* at 2054, *Webster* does not flatly require that those claims always be remanded to the district court if the court of appeals can dispose of them more efficiently.

**B.** *Merits of Doe's Constitutional Claims*

■ We now turn to the merits of Doe's constitutional claims and find that they are not viable.[9] The Supreme Court has held that "[i]t should be obvious that no one has a 'right' to a security clearance." *Egan,* 108 S.Ct. at 824. Thus, Doe had no entitlement to access to SCI. He cannot argue that NSA has deprived him of a property interest.

■ Doe's liberty interest claim is somewhat more complex but is nonetheless untenable. In his complaint, Doe maintained that NSA's determination that he

---

**8.** When this litigation first came before us, Doe maintained that the district court delegated the writing of its opinion to the Justice Department and signed the Memorandum and Judgment without any changes. The effect of this conduct was that "the District Court in reality did not 'review' Plaintiff's termination." Appellant's Br. at 31. Although the court's treatment of Doe's constitutional claims was clearly cursory, we cannot conclude that the court did not review or consider those claims.

**9.** We note again that our order upon remand requested the parties to submit new briefs dealing with "remaining issues." Doe had raised constitutional claims in his complaint, J.A. at 13–14, but chose in his new brief—as, indeed, in his original appellate briefs—not to discuss the merits of his liberty and property interest claims. Thus, we believe that Doe has had a sufficient opportunity to present his arguments on the merits of those claims and we proceed to deal with them.

was a security risk, and the "requirement" that NSA communicate this conclusion to prospective employers, unconstitutionally deprived him of his liberty. J.A. at 13. At issue is whether NSA's actions were defamatory to Doe, and, if so, whether Doe suffered harm to an interest beyond reputation. To succeed, Doe must make out a case that NSA both altered his status and stigmatized his reputation. *Doe v. Casey,* 796 F.2d 1508, 1522–23 (D.C.Cir.1986), *aff'd in part and rev'd in part sub nom. Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Doe v. Dep't of Justice,* 753 F.2d 1092, 1111 (D.C.Cir.1985).

 NSA's decision to dismiss appellant Doe is an example of a "paradigmatic" status change. *Doe v. Casey,* 796 F.2d at 1523. Thus, appellant Doe meets the first part of the test for violations of a liberty interest. NSA's actions do not, however, appear to be stigmatizing because NSA did not make public accusations that will damage Doe's standing and associations in the community. *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). NSA did not disseminate publicly any of the information that it used in making its decision vis-a-vis Doe. By contrast, NSA disclosed the information only to other federal agencies with whom NSA tried to place Doe, with Doe's consent. Declaration of Louis J. Bonanni, NSA Deputy Director for Administration, J.A. at 242. Restricted disclosure of such material to other federal agencies, with clear limits on further distribution, is not stigmatizing and does not infringe upon constitutional liberty interests. *Perry v. F.B.I.,* 781 F.2d

1294, 1301 (7th Cir.), *cert. denied,* 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986).

 Even if Doe could make out a case that NSA's actions stigmatized him, he would be unable to make the further showing that he was deprived of his liberty interest without due process of law.[10] In these circumstances, due process entitled Doe to a hearing in order to refute the charges against him and to clear his name. *Doe v. Casey,* 796 F.2d at 1524; *see also Roth,* 408 U.S. at 573 & n. 12, 92 S.Ct. at 2707 & n. 12. The record indicates that Doe received appropriate process. He was afforded notice of NSA's concerns resulting from his conduct, J.A. at 82; he submitted voluntarily to a psychiatric exam, J.A. at 91; he received consideration by a board of appraisal that recommended revoking his security clearance while specifically noting that it did not weigh the fact of his homosexuality in its decision, J.A. at 108; he submitted lengthy written materials in support of his argument, J.A. at 121–74; and he had an interview with the NSA Director. Thus, Doe had a "meaningful opportunity to contest any allegation that his homosexuality presented a security risk," *Doe v. Casey,* 796 F.2d at 1524; in the context of "very sensitive" agencies, such as NSA, the Constitution does not require more. *Id.*

We conclude, therefore, that appellant Doe did not suffer an infringement of his constitutional rights.

## V. CONCLUSION

In summary, we find that Doe's primary claim that NSA violated its own regulations fails. We also hold that Doe suffered no cognizable injury to his constitutional

---

10. We do not find it necessary to reach the question discussed by the district court of whether Doe could make out an equal protection claim by showing that he was dismissed because of the fact that his conduct was homosexual rather than heterosexual. Doe claimed in his complaint that NSA terminated his employment "on the basis of [his] acknowledged homosexual past," J.A. at 4; nevertheless, he proffered no evidence at summary judgment to disprove the statement in the NSA Director's internal memorandum that his "indiscriminate pattern of activity ... rather than the specific

homosexuality of it" made him a security risk, J.A. at 192, and he himself moved for summary judgment on the existing record. The district court made no finding based on evidence as to the factual basis for Doe's equal protection claim, but rather, for summary judgment purposes, assumed its factual basis in order to rule on its legal merits. On the existing record, there is ample reason for his dismissal based on the reasons asserted by the NSA Director and we see no reason to confront the equal protection claim.

rights. We therefore deny appellant's petition that we remand this case to the district court for fresh consideration of the regulatory and constitutional issues he has raised. We affirm the district court's decision upholding appellant's removal from employment at NSA.

*It is so ordered.*