John DOE, Appellant,

v.

Caspar WEINBERGER, Secretary, Department of Defense, et al.

No. 86–5395.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1987.

Decided June 9, 1987.

Leonard P. Bienvenu and John G. Gill, Jr., Rockville, Md., for appellant.

Freddi Lipstein, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty. and Barbara L. Herwig, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before WALD, Chief Judge, BORK and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Is an employee of the National Security Agency (NSA) entitled to a hearing under 5 U.S.C. § 7532 before being fired from his job even though a security clearance is a prerequisite for employment at the agency and the agency has revoked his clearance pursuant to statutory authority under 50 U.S.C. §§ 831–32? We hold that Congress did not intend its delegation of authority to revoke security clearances in one statute to negate the pre-termination hearing requirement contained in the other and that, accordingly, an employee has a right to administratively challenge the basis for his security clearance revocation in that pre-termination hearing.

## I FACTUAL BACKGROUND

The National Security Agency is part of the Department of Defense. Its functions include intercepting and analyzing the communications of foreign governments with the use of highly sophisticated technology. Because of its nature, the work conducted at NSA has been designated "Sensitive Compartmented Information," which is a level of classified information above "Top Secret."

Appellant was employed at NSA as a Cryptographic Material Control Technician. The duties of this position are not entirely clear to us. The government's definition is essentially tautological: "a Cryptographic Material Control Technician performs a variety of procedural functions concerned with the physical control and distribution of cryptologic materials in accordance with Agency guidelines, policies, and regulations." Appellee's Brief at 7 n. 10. At any rate, the relevant point is that an employee in this position has access to information designated as SCI. Appellant, therefore, had to attain a security clearance for access to this information in order to be employed at his job.

In March 1982, appellant voluntarily revealed to the NSA security officials that he had engaged in homosexual relations with several unknown individuals, presumably foreign nationals, during vacation travels abroad. Later on, he declared that in July 1982 he again had a homosexual liaison with an unknown individual while visiting the Dominican Republic. Based on these disclosures, the NSA Director referred the question of whether appellant should be allowed continued access to SCI to a "board of appraisal" as provided in 50 U.S.C. § 832(b).

In order to defend himself against the charge that he was psychologically unstable and therefore a security risk, appellant suggested to NSA officials that he voluntarily submit to psychiatric evaluation. The NSA officials agreed to an evaluation conducted by a psychiatrist selected by the NSA. *See* Joint Appendix (J.A.) at 102. The psychiatrist concluded that appellant suffered from a case of "mixed anxiety and depression," characterized as "mild." *Id.* at 105 (emphasis omitted). The psychiatrist also stated that "[t]he reported ... shallowness of most recent friendships and 'lack of friends' suggest difficulties with intimacy," but acknowledged that "[t]his diagnosis cannot be firmly established without more extensive clinical interviewing and psychological testing." *Id.* The psychiatrist noted that appellant's homosexuality "is not considered a mental disorder." *Id.*

The board of appraisal reviewing appellant's clearance requested additional information concerning appellant's emotional stability, judgmental maturity, loyalty, and "potential trustworthiness in relation to national security practices." *Id.* at 110. The psychiatrist r ... without conducting any additiona ... ewing or testing. In his second report, the psychiatrist stated:

> In my opinion [appellant] is living in a state of precarious emotional balance....
>
> ...
>
> ... I believe that anyone as emotionally starved as he is for relationships, will become more vulnerable to offers of friendship and more at risk of developing unwise attachments to individuals, than would be the case for a more mature and well-adjusted individual with satisfying interpersonal relationships.

*Id.* at 111–12.

The board of appraisal acknowledged that it relied heavily on the psychiatrist's second report in reaching its conclusion that appellant's access to SCI was "clearly inconsistent with the national security." *Id.* at 108. The board recommended to the Director that he terminate appellant's employment at NSA, but that in light of appellant's satisfactory job performance, the NSA assist him in finding a new job outside the NSA. The board also stated that it "took note of information concerning [appellant's] admitted homosexual/bisexual preference, but did not judge it to be material in and of itself to the Board's decision." *Id.*

The Director of the NSA accepted the board's recommendation to terminate appellant's appointment at NSA:

> [Appellant's] attorneys argue that the Board of Appraisal seems to rely almost entirely on the 10 May 1983 [psychiatric] assessment which they assert is inconsistent and contradictory with his 12 February 1983 report which they further argue was favorable to their client. I would certainly concede the first report was less damaging (albeit not exactly favorable), but I consider the second re-

port more valuable because it was better focused. Although the same interview data provided both evaluations, the second was in response to ... specific questions which help [the psychiatrist] to orient his analysis. When he does so, he portrays a potentially unstable individual who is of concern to me irrespective of sexual preference.

*Id.* at 191–92. With respect to appellant's promiscuous homosexual acts, the Director stated: "Frankly, it is the indiscriminate pattern of activity which invites the risk of security exploitation rather than the specific homosexuality of it." *Id.* 192. The Director notified appellant of the decision to remove him on the grounds that appellant's access to SCI was "not clearly consistent with the national security." *Id.* at 193.

In response to this decision, appellant petitioned the Secretary of Defense arguing that he had a right to a hearing under 5 U.S.C. § 7532 before being removed from his NSA position. After the Secretary of Defense denied his petition, appellant brought this action in the District Court for the District of Columbia. In addition to claiming that the denial of a hearing contravened congressional command, appellant argued that the government violated the constitutional requirement of procedural due process. The appellant also brought substantive challenges against the decision to revoke his security clearance and terminate his employment at NSA. Appellant complained that the decision was "arbitrary" and "capricious" and therefore must be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). And notwithstanding the assertions of the board of appraisal and the Director to the contrary, appellant also claimed that their decisions were motivated by an unconstitutional prejudice against homosexuals.

The District Court granted the government's motion for summary judgment. The court stated that "even if the termination was premised solely on plaintiff's homosexuality, the agency's decision to withdraw plaintiff's access to SCI and thereafter terminate him is rationally related to a permissible purpose." J.A. at 34.

The court also rejected appellant's other legal contentions. This appeal followed.

## II. ANALYSIS OF THE RELEVANT STATUTORY SCHEME

Several statutes bear on the resolution of this case. First, in 1950 Congress passed a law regulating the removal of employees from certain federal agencies, including the Department of Defense, for reasons of "national security." Act of August 26, 1950, 64 Stat. 476. While the statute grants the head of the relevant agency (in our case, the Secretary of Defense) complete discretion to determine when such removal "is necessary or advisable in the interests of national security," it also affords employees certain pre-removal procedural protections, including an administrative hearing, and review by the agency head or a designee. This statute was subsequently reenacted, with amendments, as 5 U.S.C. § 7532 in the 1966 recodification of Title 5 of the United States Code. *See* Act of September 6, 1966, Pub.L. No. 89–554, 80 Stat. 378, 529.

Second, the National Security Agency Act of 1959, as amended, provides that "[t]he Secretary of Defense (or his designee for the purpose) is authorized to establish such positions, and to appoint thereto, without regard to the civil service laws, such officers and employees, in the National Security Agency, as may be necessary to carry out the functions of such agency." *See* Pub.L. No. 86–36, 73 Stat. 63 (codified, as amended, at 50 U.S.C. § 402 *note*). And third, in 1964 Congress enacted another statute specifically involving "Personnel Security Procedures in the National Security Agency." *See* Act of March 26, 1964, Pub.L. No. 58–290, 78 Stat. 168. This Act requires the Secretary of Defense to establish regulations.

relating to continuing security procedures ... to assure—(1) that no person shall be employed in ... the National Security Agency ... or continue to be so employed ... and (2) that no person so employed ... shall have access to any classified information; unless such employment ... or access to classified infor-

mation is clearly consistent with the national security.

50 U.S.C. § 831. In cases of doubt boards of appraisal are authorized to recommend whether individuals should have access to classified information. *Id.* § 832(b). The Act also states:

Notwithstanding sections 7512 and 7532 of Title 5, or any other provision of law, the Secretary [of Defense] may terminate the employment of any officer or employee of the Agency whenever he considers that action to be in the interest of the United States, and he determines that the procedures prescribed in other provisions of law that authorize the termination of the employment of that officer or employee cannot be invoked consistently with the national security.

50 U.S.C. § 833. Since the government in this case expressly disavows any reliance on the summary termination authority in 50 U.S.C. § 833, appellant argues that he has a right to the procedural safeguards provided in 5 U.S.C. § 7352 before he is removed from his NSA position "in the interests of national security."

### A. *Judicial Review of Appellant's Claim*

█ The first issue raised by appellant is whether § 7532 applies to this case, thereby granting him a right to a hearing prior to his removal from the NSA. Before addressing this issue, we pause briefly to note our authority to address this issue. We recognize that § 7532 states that "[t]he determination of the head of an agency is final." Although this provision precludes a court from reviewing the Secretary's judgment that "removal is necessary or advisable in the interest of national security," it does not preclude judicial review to the extent necessary to ensure that the Secretary, in fact, acts pursuant to the statute, including its procedural requirements. *See Cole v. Young,* 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396 (1956).

In this case the government relies in part on the 1964 Act to argue that appellant's dismissal does not require the procedures set forth in § 7532. We recognize that 50 U.S.C. § 835 states that the judicial review provisions of the APA "shall not apply to

the use or exercise of any authority granted in [the 1964 Act]." Thus, *if* the government may properly rely on the 1964 Act to dismiss appellant without regard to 5 U.S.C. § 7532, 50 U.S.C.; § 835 seems to preclude any further judicial review of the agency's decision at issue in this case. Nevertheless, the basic question of whether the government may rely on the 1964 Act to bypass the § 7532 procedures remains subject to judicial resolution. *Cole v. Young* stands for the proposition that a reviewing court has authority to determine whether § 7532 does or does not apply to a particular dismissal. In sum, the government may not invoke the preclusion-of-judicial-review provision found in the 1964 statute, and applicable only to agency action within the scope of that statute's delegation, to bar judicial review of the legal question whether another statute (namely 5 U.S.C. § 7532) governs the agency action in dispute.

We remain mindful, however, of the curtailment of judicial review contained in both 5 U.S.C. § 7532 and 50 U.S.C. § 835. The scope of our review in this case is very limited, indeed. We will decide only the question of whether appellant was entitled to the procedures specified in 5 U.S.C. § 7532, because the agency declined to invoke the authority of 50 U.S.C. § 833.

### B. *The Applicability of the § 7532 Procedural Requirements*

By its own terms, § 7532 applies to appellant's dismissal. Appellant was an employee of an agency covered by the statute, the Department of Defense, of which NSA is a part. The agency's own justification for revoking appellant's security clearance and terminating his employment at NSA was "national security," within the meaning given that term by the Supreme Court. *See Cole v. Young, supra;* J.A. at 108, 192. Appellant held an "indefinite appointment" at NSA, had long since completed his probationary period, and is a United States citizen. 5 U.S.C. § 7532(c)(1)–(3).

The government, however, argues that the procedures of § 7532 are "neither mandatory nor exclusive," Brief of Appellees at

44, *i.e.*, that if an agency covered by § 7532 can properly rely on some other statutory authority to fire an employee and this alternative statutory authority allows the government to grant an employee less procedural protections than § 7532, then the agency need not abide by the procedures set forth in § 7532. This argument, however, appears to contradict the express language of the statute and its legislative history. Congress explicitly provided that § 7532 does not impair other pre-existing statutory authority for the dismissal for security reasons of one specific agency, *i.e.*, the Atomic Energy Commission. *See* 5 U.S.C. § 7533. But Congress did not provide any equivalent provision for any other agency covered by § 7532. Indeed, the House Report states:

> Under the present law, with respect to [the Departments of State and Defense,] the officer or employee who is suspended or terminated as a security risk is not entitled as a matter of right to an appeal to the head of the agency concerned. This legislation extends this appeal right to employees [of these agencies].

H.R.Rep. No. 2330, 81st Cong., 2d Sess. 3 (1950). This history, it seems to us, effectively shoots down the theory that § 7532 is only an extra option for agencies wishing to fire employees as national security risks.

But even if we accepted the government's theory, it still could not avoid the applicability of § 7532 to appellant's dismissal. The government would have to point to an alternative statutory authority that would allow the Secretary of Defense to bypass the § 7532 procedures. The two statutes which the government proffers for this purpose do not suffice. Both these statutes were enacted *after* the statute now codified as § 7532 and therefore cannot be considered to be part of a pre-existing termination authority that Congress did not wish to supplant. Furthermore, neither statute contains a provision of termination authority that renders § 7532 inapplicable to this case.

### 1. The 1959 Act

The National Security Agency Act of 1959 makes no mention of the removal of NSA employees. Yet the government contends that by authorizing the Secretary of Defense to hire NSA employees, the Act necessarily grants him the counterpart authority to fire them. Further, according to the government's theory, because this implicit termination authority is uncurtailed by any procedural limitations, appellant has no statutory right to a hearing.

Whatever implicit firing authority may ordinarily be conferred by an explicit grant of hiring authority, in this case the 1959 Act cannot override a congressional statute that expressly controls terminations in the interests of national security. Were we to follow the government's train of logic, inferences to be drawn from the 1959 Act would render the explicit mandate of 5 U.S.C. § 7532 entirely nugatory with respect to NSA employees. The Secretary of Defense could rely on an inherent termination authority, whose contours are not delineated, indeed whose existence is not even acknowledged in any Act, to fire an NSA employee without any of the procedural restraints set out in § 7532, which includes NSA termination. The government's interpretation would effectively amount to a repeal of § 7532 by implication, something that courts are traditionally most reluctant to endorse. *See, e.g., FAIC Securities, Inc. v. United States,* 768 F.2d 352, 362 (D.C.Cir.1985).

### 2. The 1964 Act

The government also contends that the § 7532 procedures are inapplicable to appellant's dismissal because he was removed from NSA employment pursuant to a rule that no person may be employed at NSA without a security clearance for access to SCI. The government points to the 1964 Act as statutory authority for this administrative rule. *See* Appellee's Brief at 4 & n. 5. But even if we assume that the 1964 Act authorizes this rule, the government's effort to escape the § 7532 procedures must fail. As we will explain, the 1964 Act does not negate the applicability of § 7532 to decisions to remove individuals from NSA employment for national security reasons, except as provided in 50 U.S.C. § 833.

Therefore, an administrative rule authorized by the 1964 Act (but not an application of § 833) cannot suspend the procedural requirements of § 7532.

The 1964 Act requires the Secretary of Defense to develop "continuing security procedures" to assure that no person employed at NSA has access to classified information or remains employed at NSA unless the access to classified information or employment is "clearly consistent" with national security. 50 U.S.C. § 831. But the procedures required by this statute for clearance revocation do not supersede the procedures specified in 5 U.S.C. § 7532 for termination. Section 831 appears to call for periodic checks designed to detect and thwart emerging security risks at NSA. Congress obviously did not intend to hamper such routine security checks by requiring any specific procedural prerequisites. But there is nothing in § 831 to suggest that if, as a result of such investigations, an NSA employee is faced with the loss of the job, the NSA may automatically bypass the administrative hearing laid down in § 7532.

In fact, the 1964 Act explicitly makes a distinction between the procedures governing security clearance decisions and the procedures governing employment terminations as provided in 5 U.S.C. § 7532. The section of the 1964 Act that establishes boards of appraisal to assist in security clearance decisions states that "appraisal by such a board is not required before action may be taken under section[ ] ... 7532...." 50 U.S.C. § 832(b). Congress would not have needed to include such a provision if a decision to revoke an NSA employee's security clearance could result automatically in the termination of the individual's employment at NSA. This provision expresses congressional recognition that separate proceedings to revoke security clearance and terminate an employee's employment may be overly time-consuming and repetitive. To allow the agency to expedite matters, Congress provided that the agency may bypass the clearance revocation proceedings and go straight to the removal proceedings under § 7532. Congress, however, did not allow the agency to revoke an employee's security clearance pursuant to § 832(b) and then subsequently dispense with the procedures for dismissing the employee under § 7532.

Indeed, the only section of the 1964 Act governing dismissals from NSA employment expressly indicates that § 7532 applies except in the most limited circumstances. This section states that "[n]otwithstanding section[ ] ... 7532 of Title 5 ... the Secretary may terminate the employment of any [NSA employee] whenever ... he determines that the procedures prescribed [therein] cannot be invoked consistently with the national security." 50 U.S.C. § 833. By specifically mentioning 5 U.S.C. § 7532 in this way, 50 U.S.C. § 833 makes clear that the 1964 Act did not render § 7532 automatically inapplicable to the dismissal of NSA employees. Rather, the statute provides that § 7532 will continue to govern the removal of NSA employees *unless and until* the Secretary of Defense makes a determination in a given case that even the minimal § 7532 procedures are not consistent with national security.

Moreover, 50 U.S.C. § 833 confirms that the 1959 Act did not repeal by implication § 7532 with respect to NSA employees. Contrary to the government's assertion, the 1959 Act did not grant the Secretary of Defense an implicit authority to fire an NSA employee in the interest of national security summarily, without even the minimum hearing stipulated in § 7532. Rather, in 1964, Congress granted the Secretary the explicit authority to dispense with the § 7532 hearing, but only when national security requires such summary dismissals. The government's construction of the 1959 Act, in addition to rendering § 7532 entirely nugatory, would render § 833 entirely superfluous.

■■■ Thus, in enacting § 833, Congress made plain that neither the 1959 Act nor the 1964 Act by its own force suspends the procedural rights granted by § 7532. These procedures control the removal of individuals from NSA employment except in those limited circumstances when national security requires that even these proce-

dures be eliminated. As the government acknowledges, in this case the Secretary has not found that a § 7532 hearing would itself contravene national security. Accordingly, appellant is entitled by law to that hearing.

### C. *Hearing Options Available to the Secretary Under the Current Statutory Scheme*

We point out at this juncture that our holding will not necessarily require the agency to "relitigate" *de novo* in the § 7532 proceedings the same issues already decided by the NSA Director pursuant to 50 U.S.C. § 832(b). We note as well that any duplication in process that does result is of the agency's own making. It has established an administrative rule mandating that revocation of SCI clearance automatically results in dismissal. But it has not availed itself of the means Congress expressly provided in § 832(b) for avoiding procedural duplication, through bypassing the security clearance revocation proceedings and going directly to the § 7532 proceedings for a determination of whether removal is necessary or advisable in the interests of national security.

In addition, even if the Secretary wishes to rely on the expertise of the boards of appraisal in making the initial clearance revocation decision, the Secretary could still avoid duplication of process by vesting the pre-termination hearing authority in those same boards of appraisal. Section 7532 requires only that the hearing be conducted "by an agency authority duly constituted for this purpose." The Secretary could then choose the NSA Director as his "designee" to review the boards' termination conclusions under 5 U.S.C. § 7532, just as he has chosen the NSA Director as his designee for making security clearance decisions under § 832(b). *See* J.A. at 62. Under § 7532, the Secretary may not delegate his duty to make the final removal decision or his duty to supply the dismissed employee with a written statement of this decision. But since § 7532 would allow the Secretary to base his final decision on the review conducted by the NSA Director, one board of appraisal proceeding for making

termination as well as clearance decisions would suffice. As long as the boards of appraisal conduct the hearing specified in § 7532 before they recommend that an employee be dismissed from NSA employment because of a lack of access to SCI, the Secretary would satisfy the congressional demand that the employee receive an administrative hearing and review to contest dismissal as a national security risk.

█ The Secretary of Defense, however, has chosen to keep termination proceedings under § 7532 separate from security clearance proceedings under § 832(b). He has not delegated the § 7532 hearing or review authority to the NSA Director or to NSA administrative bodies. *See* J.A. at 62, 230. While the Secretary is well within his authority to keep these proceedings separate, he cannot subsequently complain that their separation causes duplication and, on this basis, deny appellant his right to a § 7532 hearing. Once the Secretary has chosen, through the NSA Director, to institute a board of appraisal proceeding to assess appellant's continued access to SCI, but has not chosen to use the same board of appraisal to conduct the § 7532 hearing, the Secretary must grant appellant a separate § 7532 hearing, even at the risk of duplicating the earlier proceedings. We leave to the Secretary the initial determination of what the precise scope of this hearing should be.

### III. APPELLANT'S REMAINING CLAIMS: APPLICATION OF THE EXHAUSTION DOCTRINE

Since we hold that appellant has a right to a hearing under 5 U.S.C. § 7532, we need not address his other claims at this time. *See Vitarelli v. Seaton*, 359 U.S. 535, 540, 79 S.Ct. 968, 973, 3 L.Ed.2d 1012 (1959). The possibility always exists that in the course of this hearing the Secretary of Defense will reverse the earlier agency decision, and appellant must exhaust this administrative remedy before seeking further judicial review. Judicial reliance on the exhaustion doctrine is appropriate when a plaintiff raises a constitutional issue that may not have to be decided if

relief is obtained in the administrative proceedings. *See Ticor Title Insurance Co. v. Federal Trade Commission*, 814 F.2d 731, 738–40 (D.C.Cir.1987) (opinion of Edwards, J.).

The remaining claims raised by appellant in this case, including his constitutional claims, may also be subject to the argument that they are immune from judicial review by either § 7532 or 50 U.S.C. § 835. *Cf. Webster v. Doe*, — U.S. —, 107 S.Ct. 3182, 96 L.Ed.2d 671 (1987), *granting cert. to Doe v. Casey*, 796 F.2d 1508 (D.C. Cir. 1986) (question presented: whether decision of CIA Director under 50 U.S.C. § 403(c) to discharge CIA employee for national security reasons is judicially reviewable under the APA); *Department of Navy v. Egan*, — U.S. —, 107 S.Ct. 2459, 95 L.Ed.2d 868 (1987), *granting cert. to* 802 F.2d 1563 (Fed.Cir.1986) (question presented: whether Merit Systems Protection Board, in course of reviewing removal of employee for failure to maintain required security clearance, may review substance of underlying decision to revoke the clearance). Were we to consider these claims at this time, we would have to confront the thorny issue of whether statutes that explicitly curtail judicial review of certain administrative decisions were intended to preclude judicial review of constitutional claims; and should we find such an intent, the even pricklier question of whether this preclusion of judicial review was itself constitutional. *See Bartlett v. Bowen*, 816 F.2d 695 (D.C.Cir.1987), *vacated and rehearing en banc granted*, (June 8, 1987). These are certainly not issues that courts should decide when the exhaustion of administrative remedies may obviate the need for their resolution.

In this case, the District Court proceeded to decide appellant's claims without even considering whether or not a judicial determination of these claims was proper. Consequently, we vacate the decision of the District Court concerning appellant's remaining claims.

### CONCLUSION

Because we hold that appellant is entitled to an administrative hearing under 5 U.S.C. § 7532, we reverse the contrary decision of the District Court. Because appellant must exhaust the § 7532 process before seeking further judicial review, we vacate the remainder of the District Court's decision, without expressing any opinion on the ultimate disposition of appellant's remaining statutory and constitutional claims. Finally, we remand this action to the District Court for an appropriate order directing the Secretary of Defense to act pursuant to 5 U.S.C. § 7532.

*Reversed in part, vacated in part, and remanded.*