Paul S. SCHAEFER, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Eric J. ZEIDMAN, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Peter H. GREENMAN, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

David A. BOSSE, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Rand J. CUTHBERTSON, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Larry A. ZIESKE, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Donald A. HOLLSTEN, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Scott D. GILLOGLY, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Lawrence P.A. BURGESS, Plaintiff,

v.

Richard B. CHENEY, et al., Defendants.

Civ. A. Nos. 89–1850 to 89–1852, 89–2003 to 89–2007 and 89–2294.

United States District Court, District of Columbia.

Oct. 25, 1989.

Jane Carol Norman, Bond, Conte and Norman, Washington, D.C., for plaintiffs.

John M. Facciola, Asst. U.S. Atty., Lieutenant Colonel Mark A. Steinbeck, Major Robert C. McFetridge, Office of the Judge Advocate General Dept. of the Army, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

REVERCOMB, District Judge.

This case involves the consolidated complaints of nine Plaintiffs, all Army medical doctors, who attended the United States Military Academy at West Point (USMA) and then entered medical school between 1973 and 1976 pursuant to the Defendants' Army Regulation 601–112 program. The Plaintiffs contend that the Defendants have miscalculated the dates on which their active duty service obligations (ADSOs) expire in violation of AR 601–112.[1] First, they claim that under AR 601–112 their ADSOs are a total of seven years. Second, they claim that their years in Army residency apply to their ADSOs. The Plaintiffs further claim that because the Defendants have recalculated and extended their ADSOs beyond the time allowed under AR 601–112 their constitutional rights have been violated; specifically, (1) a deprivation of their property without just compensation or due process in violation of the Fifth Amendment; (2) an illegal and unreasonable seizure of their persons in violation of

1. AR 350–100 ¶ 5(b) (November 25, 1985) defines "active duty service obligation" as "[a] specific period of active duty that an officer must serve before becoming eligible for voluntary separation."

the Fourth Amendment; and (3) involuntary servitude in violation of the Thirteenth Amendment. Finally, the Plaintiffs contend that even if the Defendants are lawfully able to recalculate and extend their ADSOs in accordance with AR 601–112, the Plaintiffs relied upon earlier representations by the Defendants and the Defendants are estopped from imposing their most recent ADSO calculations. This matter is before the Court pursuant to the Parties' cross-motions for summary judgment. FED.R.CIV.P. 56.[2]

This Court rules that the Defendants are correctly interpreting and applying AR 601–112 in calculating all of the Plaintiffs' ADSOs. Accordingly, this Court does not reach Plaintiffs' constitutional claims which were premised on the assumption that the Plaintiffs were being detained by Defendants beyond the ADSO authorized by statute and regulation. This Court further rules that to the extent the Plaintiffs have been given contrary representations by the Defendants in their ADSOs and release dates, the Plaintiffs should exhaust their available remedies before the Army Board for Correction of Military Records which is in a better position than this Court to determine the binding effect of representations that Defendants had earlier made to the Plaintiffs.

## I. Facts

This Court reviews the histories of each Plaintiff separately.

### A. Major Paul S. Schaefer

Plaintiff Schaefer is stationed at Walter Reed Army Medical Center in Washington, D.C. Plaintiff graduated from USMA on June 4, 1975 and entered medical school on September 8, 1975. Plaintiff signed a medical school agreement which contained table 1–1 from the 1972 AR 601–112 regulation but which also expressly stated that he would incur a twelve-year ADSO. He graduated from medical school on June 3, 1979 and did his internship from July 1, 1979 to June 30, 1980. On December 10,

1979 he signed a residency agreement which provided that he incurred an additional two-year ADSO.

On March 7, 1988 he met with Captain Patricia Shehan in order to determine the correct date of his obligated service. Captain Shehan concluded that Plaintiff's ADSO would be complete on June 30, 1989. Captain Shehan informed Plaintiff that his total ADSO was seven years and that he was allowed three years payback for his residency. After making this determination, Captain Shehan called her supervisor, Lieutenant Colonel Otis Linkous, who confirmed that Plaintiff's ADSO expired on June 30, 1989. The date was given to Plaintiff by Captain Shehan in writing.

Plaintiff Schaefer contends that his ADSO was complete on June 30, 1989. The Defendants have calculated Plaintiff's ADSO to expire on March 1, 1994 but represent to Plaintiff and this Court that they will release him on June 4, 1990.

### B. Major Lawrence P.A. Burgess

Plaintiff Burgess is stationed at Walter Reed Army Medical Center in Washington, D.C. Plaintiff graduated from USMA on June 2, 1976 and entered medical school on August 20, 1976. He graduated from medical school on May 18, 1980 and did his internship from July 1, 1980 to June 30, 1981. On November 28, 1980 Plaintiff signed a residency agreement for training in otolaryngology which specified that he incurred an additional two-year ADSO. He participated in this program from July 1, 1981 to June 30, 1985. On July 5, 1985 he signed an agreement for a civil fellowship in head and neck surgery in which he incurred an additional one-year ADSO. He was in this program from July 1, 1985 to June 30, 1986.

When he was recruited for the AR 601–112 program he met with Lieutenant Colonel Boyle who showed him the 1972 version of the regulation which contained the merger of obligations table. LTC Boyle informed Plaintiff that his total obligation

**2.** Defendant does not waive its right to challenge the representations allegedly made to the Plaintiffs but contends that even assuming their

· validity it is entitled to summary judgment as a matter of law.

for participation in the program and USMA would be seven years and that his residency would apply to the payback of his ADSO.

Plaintiff Burgess claims that he will satisfy his ADSO on May 18, 1991. The Defendants have calculated Plaintiff's ADSO to expire on March 1, 1998 but represent to Plaintiff and this Court that it will release him May 18, 1994.

C.   Major David A. Bosse

Plaintiff Bosse is stationed at Brooke Army Medical Center in Fort Sam Houston, Texas. He graduated from USMA on June 5, 1974 and entered medical school on September 4, 1974. He graduated from medical school on March 3, 1978 and did his internship from July 1, 1978 to June 30, 1979. On November 15, 1978, Plaintiff signed a training agreement for pediatrics which specified a two-year ADSO and provided that he would not be permitted to payback prior ADSOs during the residency. He was in his residency training from July 1, 1979 to June 30, 1981. On December 5, 1983 he signed a training agreement for a radiology residency program which provided that he would not incur an additional ADSO but that he could not payback any prior ADSO during the residency. He was involved in this residency from July 1, 1984 to June 30, 1988.

While at USMA in 1973 and 1974 the Plaintiff was provided with the 1972 version of AR 601–112 which provided for a total ADSO of seven years by Major Vanderbush who was the officer in charge in the Dean's office.

Plaintiff Bosse contends that his ADSO expires on July 1, 1990. The Defendants have calculated Plaintiff's ADSO to expire on December 5, 1996 but represent to Plaintiff and this Court that they will release him on March 4, 1992.

D.   Major Rand J. Cuthbertson

Plaintiff Cuthbertson is stationed at West Point, New York. He graduated from USMA on June 2, 1976 and entered medical school on August 27, 1976. He graduated from medical school on May 23, 1980 and did his internship from July 1, 1980 to June 30, 1981. He served active duty from July 1, 1981 to June 30, 1984. On December 5, 1983 he signed a residency agreement for radiology training that provided he would not incur any additional ADSO but that his prior ADSOs would be tolled while he was in the residency program. Plaintiff was in the residency program from July 1, 1984 to June 30, 1988.

In the week of August 4, 1986 he met with LTC Linkous who acknowledged that there were administrative problems in calculating the ADSOs under the AR 601–112 program but that the Defendants' policy was to retain the physicians as long as possible.

Plaintiff Cuthbertson claims that his ADSO will be fulfilled on June 30, 1990. The Defendants have calculated Plaintiff's ADSO to expire on March 1, 1997 but represent to Plaintiff and this Court that they will release him on May 13, 1992.

E.   Major Peter H. Greenman

Plaintiff Greenman is stationed at Walter Reed Army Medical Center in Washington, D.C. He graduated from USMA on June 2, 1976 and entered medical school on August 19, 1976. He graduated from medical school on May 18, 1980 and did his internship from July 1, 1980 to June 30, 1981. On December 8, 1980, Plaintiff signed a residency agreement for general surgery training which provided that he incurred an additional year ADSO. He participated in this residency from July 1, 1981 to June 30, 1982. On December 10, 1981, Plaintiff signed a residency agreement for anesthesiology training which provided that he could pay back his USMA ADSO during the course of this residency. Plaintiff was in this residency from July 1, 1982 to June 30, 1985.

In 1971 and early 1972, while in high school, Plaintiff was interested in medical school and met with an Army recruiter. The recruiter apprised Plaintiff that under AR 601–112 the Plaintiff would incur a seven-year ADSO which he could start to payback during residency training.

When Plaintiff signed his residency agreement, it stated that he would be paying back his obligation day for day. However, the ADSO on the residency agreement did not reflect this payback. The person who handed Plaintiff the residency agreement told Plaintiff not to worry about the miscalculation because ADSOs were recalculated all of the time and that it would be changed later. While at Madigan in 1985 the personnel officer twice submitted an ADSO of October 1, 1989. However, while at Walter Reed Army Medical Center Plaintiff discovered that the ADSO release date in his jacket was 1994. He called Captain Shehan who informed him that the thirteen-year ADSO reflected in his orders was a mistake and that his ADSO was seven years and would expire in 1988. Plaintiff advised Captain Shehan that his actual ADSO date expired in 1989 because he had incurred an extra year during his general surgery residency. Captain Shehan stated that she would immediately correct Plaintiff's ADSO date to expire on 1989. Soon after, however, Captain Shehan advised Plaintiff that someone in the Surgeon General's Office had told her that Plaintiff could not pay back his obligation during residency.

In the spring of 1989 Plaintiff received a call from Mr. Omar T. Ojeda, a civilian attorney from the Walter Reed Army Medical Center JAG office. Mr. Ojeda told Plaintiff that he had reviewed all of the applicable regulations and that Plaintiff's ADSO expired on October 1, 1989. Mr. Ojeda then spoke with Plaintiff's attorney and also told her that Plaintiff's ADSO expired on October 1, 1989 and that he would try to arrange a meeting with the central JAG office at the Pentagon to discuss the issue. However, when Plaintiff called the JAG office to see if the meeting had yet been arranged, Lieutenant Colonel Thompson told Plaintiff that his office would no longer be involved in the matter.

Plaintiff Greenman claims that his ADSO was satisfied on October 1, 1989. The Defendants have calculated Plaintiff's ADSO to expire on March 2, 1995 but represent to Plaintiff and this Court that they will release him on June 30, 1992.

F. Major Larry A. Zieske

Plaintiff Zieske is stationed at Tripler Army Medical Center in Honolulu, Hawaii. Plaintiff graduated from USMA June 5, 1974 and entered medical school on September 3, 1974. He graduated from medical school on May 22, 1978. On May 26, 1976 Plaintiff signed an agreement providing that his ADSO obligations and paybacks would be calculated according to the 1976 version of AR 601–112. Plaintiff did his internship from July 1, 1978 to June 30, 1979. On January 9, 1979 Plaintiff signed a residency agreement for otolaryngology training which provided for an additional two-year ADSO. Plaintiff participated in this residency from July 1, 1979 to June 30, 1983. On February 21, 1984 Plaintiff signed a training agreement which provided that he would incur an additional one-year ADSO for a civil fellowship. He participated in this program from July 1, 1984 to June 30, 1985.

While at USMA he spoke with Major Vanderbush and Major Morin regarding the AR 601–112 program. He was specifically advised that his total ADSO would be seven years and that he would begin to serve his ADSO after internship during his residency. He was provided with a copy of AR 601–112 which contained a table that showed his total ADSO obligation as seven years.

Plaintiff Zieske contends that his ADSO will be fulfilled on May 23, 1990. The Defendants have calculated Plaintiff's ADSO to expire on February 25, 1996 but represent to Plaintiff and this Court that they will release him on May 23, 1992.

G. Major Eric J. Zeidman

Plaintiff Zeidman is stationed at Brooke Army Medical Center, Fort Sam Houston, Texas. He graduated from USMA on June 4, 1975 and began medical school on August 28, 1975. He graduated from medical school on June 1, 1979 and did his internship from July 1, 1979 to June 30, 1980. On December 3, 1979 Plaintiff signed a residency agreement for urology training

which provided for an additional two-year ADSO. He participated in this residency program from July 1, 1980 to June 30, 1984. On January 24, 1985 Plaintiff signed an agreement for a civil fellowship in urodynamics in which he incurred an additional one-year ADSO. He participated in this program from July 1, 1986 to June 30, 1987.

In early 1986 Plaintiff asked then Major Linkous what his ADSO would be if he accepted a fellowship. Major Linkous replied that the obligation could be calculated to expire in either 1991 or 1993 depending upon which calculation formula was used. On September 14, 1988, Plaintiff spoke with Captain Shehan who informed Plaintiff that she had to recalculate all of Plaintiff's obligations because they had all been done differently and that there were a lot of questions. On September 20, 1988, Plaintiff again spoke with Captain Shehan who told Plaintiff that his five-year USMA obligation had merged with his medical school obligation into a single seven-year ADSO pursuant to a table contained in AR 601-112. On September 21, 1988, Plaintiff spoke with Colonel Fauver, chief of graduate medical education in the Army, who stated he had some knowledge of the problem in calculating ADSOs and that Captain Shehan probably needed some help from higher within the Army to resolve these problems.

Plaintiff Zeidman contends that his ADSO will be complete on June 30, 1990. The Defendants have calculated Plaintiff's ADSO to expire on March 8, 1997 but represent to Plaintiff and this Court that they will release him on May 30, 1993.

## H. Major Scott D. Gillogly

Plaintiff Gillogly is stationed at Fitzsimmons Army Medical Center in Aurora, Colorado. He graduated from USMA on June 2, 1976 and entered medical school on August 27, 1976. He graduated from medical school on May 11, 1980 and did his internship from July 1, 1980 to June 30, 1981. On December 8, 1980 he signed a residency agreement for training in orthopedics in which he incurred an additional two-year ADSO.

While attending high school Plaintiff was aware that he wanted to go to medical school. Plaintiff, who had already been offered scholarships at other colleges, was told by William Roden, a football coach at USMA, about the AR 601-112 program. Roden sent Plaintiff a letter that stated Plaintiff would incur a four year obligation for medical school that would be paid back after internship and during residency. Other USMA football coaches subsequently told Plaintiff that his total ADSO would be seven years and that payback of the obligation would begin after internship.

Plaintiff Gillogly claims that his ADSO will be fulfilled on May 12, 1990. The Defendants have calculated Plaintiff's ADSO to expire on February 12, 1996 but represent to Plaintiff and this Court that they will release him on May 12, 1992.

## I. Lieutenant Colonel Donald A. Hollsten

Plaintiff Hollsten is stationed at Brooke Army Medical Center, Fort Sam Houston, Texas. He graduated from USMA on June 6, 1973 and entered medical school in September 1973. He graduated from medical school on June 3, 1977. He did his internship from July 1, 1977 to June 30, 1978. On November 29, 1979 he signed a residency agreement for training in ophthomology in which he incurred an additional two-year ADSO. He participated in this residency program from July 1, 1980 to June 30, 1983. On December 10, 1984 Plaintiff signed an agreement for a civil fellowship in oculoplastics which provided for an additional one-year ADSO with no payback for his prior ADSOs during the time of this program. He participated in this program from July 1, 1986 to June 30, 1987.

In February 1973 he had an interview in the Dean's office regarding the AR 601-112 program. One of the counselors told Plaintiff that under the program he would incur a seven-year ADSO to run after his internship. Furthermore, he signed an agreement expressly adopting the seven-year merged obligation.

Plaintiff Hollsten contends that his ADSO was complete on June 30, 1989. The Defendants have calculated Plaintiff's ADSO to expire on June 3, 1992 but represent to Plaintiff and this Court that they will release him on June 3, 1990.

## J. Relief Sought

The relief which the Plaintiffs seek varies. Two of the Plaintiffs, Schaefer and Greenman, contend that their ADSOs have expired and seek release from their Regular Army commissions. Six of the Plaintiffs, Zeidman, Bosses, Cuthbertson, Zieske, Gillogly, and Burgess, do not contend that their ADSOs have expired or desire to be discharged but are attempting to establish their eligibility for a Medical Officer Retention Bonus (MORB) authorized by Congress for military doctors who will complete their ADSOs prior to October 1, 1991. *See* National Defense Authorization Act, Pub.L. No. 100–456, § 612. The MORB authorizes the military services to pay a substantial retention bonus, up to $20,000 per year, to eligible military doctors who execute written agreements by September 30, 1989, to extend their ADSOs for at least two additional years. Finally, Plaintiff Hollsten is eligible for the 1989 MORB but will not get full credit if he retires at twenty years, resulting in a discrepancy of $48,000.00.

## II. Army Regulation 601–112

The Plaintiffs raise two arguments under the regulation. First, they contend that under AR 601–112 their total ADSO is only seven years. Second, they contend that their residency service should apply to fulfill their ADSOs. As discussed below, different results occur depending upon whether the 1972, 1974 or 1976 regulation applies.

### A.

■ All of the Plaintiffs contend that based on AR 601–112 their total ADSOs are seven years. The Defendants contend that only Plaintiff Hollsten is entitled to a seven-year ADSO because at the time the other eight Plaintiffs had commenced their medical school studies AR 601–112 had been amended to require a twelve-year ADSO.

In 1972 AR 601–112 (July 28, 1972) provided:

> Officers participating in this program contract for an additional active duty commitment. This service commitment is in addition to any other service commitment the officer may have incurred or may incur, either prior to or subsequent to entry into this program and will be fulfilled consecutively, rather than concurrently, with any other commitment, except as specified in table 1–1.

A graduate of USMA generally incurs a five-year ADSO. 10 U.S.C. § 4348(a)(2)(B). Although AR 601–112 provides that this prior obligation must be fulfilled consecutively to the "additional active duty commitment" that the officer incurs under the AR 601–112 program, the regulation expressly specifies an exception to consecutive obligations pursuant to table 1–1.[3]

**3.** Table 1–1 provides:

**Table 1–1. Table of Incurred Obligations***

| Years of Participation in this program (Projected) | Years of obligation incurred prior to entry into program (Includes USMA, ROTC, Selective Service, ECP, etc.) Years | | | | | |
|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 |
| 1 | **3 | **3 | **3 | **3 | ***4 | ***5 |
| 2 | ***3 | ***3 | ***3 | 3 | 4 | 5 |
| 3 | 3 | 3 | 3 | 4 | 5 | 6 |
| 4 | 4 | 4 | 4 | 5 | 6 | 7 |
| 5**** | 5 | 5 | 5 | 6 | 7 | 8 |

* To determine service obligation incurred as a result of program participation (with the understanding that the "payback" obligation starts upon completion of first year of graduate medical education or internship) first determine the

Under table 1–1, as both Plaintiffs and Defendants agree, the USMA and medical school obligations of an officer merge into a total seven-year obligation.[4]

On March 20, 1974 AR 601–112 was amended. Plaintiffs contend that the amended regulation did not purport to repeal table 1–1 and that the merger rule continues in effect. The Defendants contend that although the 1974 amendments did not expressly state that the merger table was repealed, the amendments nonetheless clearly establish that the merger rules were replaced with a new formula for calculating ADSOs under the AR 601–112 program.

The 1974 amendments to AR 601–112 provide in pertinent part:

> Participating officers incur an active duty commitment of seven years regardless of time spent in this program. This service commitment is in addition to any other service commitment the officer may have incurred prior to entry into this program and will be fulfilled consecutively, rather than concurrently, with any other commitment.

The clear intent of the 1974 amendments is to replace the merger rule with a new means for determining ADSOs. The first sentence of the paragraph provides that the ADSO for participation in the program is seven years regardless of the length of time that an officer participated in the program. This is a clear departure from the merger table which provides that the ADSOs are precisely a function of the time spent in the program. The 1974 regulation then immediately provides that this seven-year commitment "is in addition to any other service commitment the officer may have incurred prior to entry into this program and will be fulfilled consecutively, rather than concurrently, with any other commitment." This Court cannot fathom how the regulation can be drafted any more clearly or directly than it already provides. Although the 1972 version also contained this consecutive commitment clause it was then expressly qualified by the clause "except as specified in table 1–1." The 1974 amendments do not contain this qualification nor does it contain table 1–1. Accordingly, this Court rules that the clear operation of the 1974 amendments is to replace the merger formula with the consecutive formula.[5]

number of years of program participation in the left hand vertical column. Determine the obligation previously incurred (USMA, ROTC, Selective Service, ECP, etc.) in the top horizontal line. Read across from the years of participation in the column reflecting the previously incurred obligation. The figure at the intersection of these lines is the obligation incurred as a program participant. Note carefully footnotes 2 and 3.

 ** Two years may be satisfied during participation in Army graduate medical education subsequent to first year level.

 *** One year may be satisfied during participation in Army graduate medical education subsequent to first year level.

 **** Five year "program" is 1 year preprofessional training plus 4–years professional training. Obligations are calculated separately, i.e., the obligation for preprofessional training is incurred at the completion of the preprofessional year, calculated and carried forward as the participant enters professional school.

**4.** The merger rule and table 1–1 were enacted in the 1972 regulation. Prior to 1972, AR 601–112 (October 5, 1970) provided:

> Officers participating in this program contract for an additional active duty commitment. This service commitment is in addition to any other service commitment the officer. may have incurred or may incur, either prior to or subsequent to entry into this program and will be fulfilled consecutively, rather than concurrently, with any other commitment. A service commitment incurred under this program may not be fulfilled during any further training such as on-the-job training while in professional school, externship, clinical training, clerkship, duty performed during or be-tween academic sessions, internship or residency. A service commitment incurred prior to entry into this program may not be fulfilled while participating in this program or the Army Intern Program, but may be fulfilled while participating in the Army Residency Program.

The regulation further contained a chart which provided that an officer incurred a service commitment of twelve months for each academic year of subsidized professional schooling.

**5.** At argument Defendants represented that the 1974 amendments were made because the De-

AR 601–112 was again amended on September 15, 1976. Although the 1976 version expressly provides that it "is effective immediately and applies to all officers who will enter, or are now participating or who have participated in ... AR 601–112," the Defendants represent that they cannot unilaterally apply the 1976 amendment retroactively and that it accordingly only applies to Plaintiff Zieske who entered the AR 601–112 program at the time the 1974 amendments were in effect but who later signed an agreement to have his ADSO calculated under the terms of the 1976 amendments. The 1976 amendments provide for an eight-year ADSO for participation in AR 601–112 but, unlike the 1974 version, provides a one-year ADSO payback for a participant's internship. Accordingly, as recognized by Defendants, there is no difference between the 1974 and 1976 regulations in the actual result of ADSO calculations. The 1976 version, like the 1974 version, applies a consecutive formula and does not contain the 1972 merger table.[6]

 The Plaintiffs alternatively contend that in order for the consecutive formula in the 1974 and 1976 amendments to apply they had to acknowledge their service obligations. The provision that the Plaintiffs rely upon provides that "[p]articipants will acknowledge the service obligation prior to entry into the program." The Plaintiffs contend that they never acknowledged a twelve- or thirteen-year consecutive service commitment and that accordingly the 1974 and 1976 amendments do not apply to them. The Plaintiffs misconstrue the effect of the acknowledgment provision. The language does not require that the Plaintiffs acknowledge their commitments in order for the consecutive formula to apply to them. Rather, the requirement that the Plaintiffs acknowledge their service obligations is in effect a condition precedent to their participation in the program itself. However, as condition precedents can be waived, the Defendants could allow the Plaintiffs to enter the program without requiring that they acknowledge their service obligations. Once Plaintiffs entered the program and received its benefits they were required to fulfill all of its responsibilities that were clearly spelled out in the 1974 and 1976 amendments, including the seven- and eight-year service commitments, respectively, which were to be served consecutive to any other obligations that the Plaintiffs had previously incurred.[7]

Accordingly, this Court rules that the 1974 version applies to Plaintiffs Schaefer, Zeidman, Greenman, Bosse, Cuthbertson, Gillogly and Burgess, and that they incurred seven-year ADSOs to be paid back consecutive to their five-year USMA ADSOs incurred prior to their participation in

fendants determined that they were not receiving a good return on their investment by providing individuals with four years of school at USMA, four years of medical school, a year of internship training, and residency training in exchange for only seven years of total service commitment. The decision to amend the regulations to require increased service commitments under the AR 601–112 program came at a time when the program itself was under fire on Capital Hill for its economic inefficiencies and the House Committee on Appropriations, in its report submitted in explanation of its appropriation bill for the Department of Defense for the fiscal year ending June 30, 1974, expressly recommended that participants in the AR 601–112 "program should incur a seven year obligated tour of duty after completion of the [AR 601–112] training" and that "[t]his obligation will be in addition to any other obligations previously incurred." H.R.REP. NO. 93–662, 93d Cong., 1st Sess., 51–52 (1973).

6. The 1976 version provides in applicable part:

C. Those officers entering contracts under AR 601–112 on 20 March 1974 and later will incur a total active duty obligation of eight years (includes one year pay-back for first year military graduate professional education for MC and DC officers who in fact participate in military graduate professional education) plus the remainder of any unfulfilled obligations incurred prior to entry into this program.

7. Even assuming that the Plaintiffs were required to acknowledge their service commitments in order for the consecutive formulas in the 1974 and 1976 regulations to apply to them, the Plaintiffs do not argue what is required to establish acknowledgment. This Court notes that immediately after their graduation from USMA and prior to entry into medical school the reassignment orders and disposition forms of Plaintiffs Schaefer, Zeidman, Greenman, Cuthbertson, Gillogly and Burgess reflected thirteen-year obligated volunteer status.

the AR 601–112 program. This Court rules that the 1976 version applies to Plaintiff Zieske and that he incurred an eight-year ADSO to be paid back consecutive to his five-year USMA ADSO incurred prior to his participation in the AR 601–112 program. Finally, this Court rules that the 1972 version applies to Plaintiff Hollsten who under the merger rule has incurred a total seven-year ADSO for his participation in the program and his USMA education.

### B.

A second legal dispute between the parties arising out of the interpretation of AR 601–112 is whether the Plaintiffs are entitled to payback of their ADSOs during their residency periods. The answer again depends upon whether the Plaintiffs are covered by the 1972, 1974 or 1976 regulations.

The 1974 and 1976 amendments expressly allow residency to fulfill prior service commitments. The 1974 version provides:

> A service commitment incurred under this program may not be fulfilled while participating in this program; e.g., on-the-job training while in professional school, externship, clinical training, or off-quarter utilization. A service commitment incurred prior to entry into this program may not be fulfilled while participating in this program. Time spent in training in first year graduate medical education or internship or in dental general practice residency (one year) does not provide for reduction of obligation incurred prior to entry into this program. *However, participation in an Army residency program may be used to fulfill no more than three years of a service*

> *commitment, incurred prior to entry into this program, when computed on a year for year basis subsequent to the first year of graduate medical education in internship or dental general practice residency (one year).*

Similarly, the 1976 version provides:

> Those officers who entered this program with an unfulfilled active duty obligation will accrue payback time for that obligation year for year up to a maximum of three years during a period of residency training after the first year of military graduate professional education.

Indeed, the Defendants concede that where the 1974 and 1976 regulations apply the period of residency will in fact fulfill a participant's service commitment: "full payback during residency ... is permitted when USMA and medical school obligations are not merged but remain distinct obligations which are required to be served consecutively under the applicable regulations and directive ... generally of 12–year durations." Defendant's Motion for Summary Judgment at 9–10.[8]

Plaintiff Hollsten, who entered the AR 601–112 program under the 1972 regulation is not entitled to payback of his ADSO for his residency. The 1972 regulation provides that

> [a] service commitment incurred under this program may not be fulfilled during any further training such as on-the-job training while in professional school, externship, clinical training, internships or first year graduate medical education. A service commitment incurred prior to entry into this program may not be fulfilled while participating in this program, nor while participating in the Army Residen-

---

**8.** The confusion in regard to whether the Plaintiffs who participated in the AR 601–112 program under the 1974 and 1976 amendments would receive payback for their residency arose because these Plaintiffs were also contending that they were entitled to a calculation of their ADSOs under the merger rule in the 1972 regulation. The Defendants responded that if the merger rule under the 1972 regulation applied then the Plaintiffs could not also obtain the residency payback rule which was contained in the 1974 and 1976 regulations with the consecutive formulas. Otherwise, the Plaintiffs would be selecting the most favorable calculation rules from each regulation when each regulation represents a separate and distinct means for calculating ADSOs. In the ADSO calculations that Defendants submitted to this Court the Defendants in fact applied residency periods to the ADSOs of the Plaintiffs who fall under the 1974 and 1976 regulations.

**50**

cy Program, except as specified in table 1.[9]

Although the first sentence of the above provision at first blush suggests by negative implication that service commitments incurred under the program can be fulfilled while in residency, the second sentence expressly provides that a service commitment incurred prior to entry into the program may not be fulfilled while participating in the program or in residency. Plaintiff contends, however, that the second sentence applies only to service commitments incurred *prior* to entry into the program and not to the service commitment incurred *under* the program. Although the Plaintiff is correct that the two sentences in fact employ a distinction in when the service commitment is incurred, this distinction is of no effect where under the regulation the prior obligation and the program obligation are merged into one obligation. The service commitment incurred under the program is indistinguishable from that incurred prior to entry into the program. Since the merged obligation includes the prior obligation the Defendants have interpreted the 1972 regulation to preclude application of residency periods to the ADSOs.

The rationale provided by the Defendants for this interpretation of the 1972 regulation is that because the merger rule itself establishes a generous ADSO calculation, whereby a program participant effectively incurs only an additional two-year

commitment to his or her five-year USMA commitment, any application of the residency payback rule would create the absurd result that an officer who received four years of USMA education, four years of medical school, one year of internship, and three years of residency, would owe only four years of active duty service to the Defendants.

This Court finds the Defendants' interpretation of their 1972 regulation persuasive. To accept Plaintiff Hollsten's interpretation would be contrary to one of the fundamental purposes of requiring ADSOs which is to ensure that the Defendants receive a fair *quid pro quo* for their investment in personnel. *See* AR 350–100 Active Duty Service Obligations ¶ 7.[10]

Moreover, the Defendants' interpretation and application of the 1972 version of AR 601–112 is consistent with DoD Instruction 6000.2, Service Obligations for Military Medical Interns and Residents (December 30, 1969), which was in effect at the time Plaintiff Hollsten entered medical school and signed his residency agreement. The instruction provides:

The periods of active duty for which a Medical Corps officer is obligated to serve under intern, residency and similar training programs may not be served concurrently. However, the performance of a period of obligated active duty following internship may be postponed in

---

**9.** Table 1–1 provides two exceptions when a program participant's residency may apply to his ADSO but these exceptions do not apply to those who participated in the program for four years. The Plaintiff does not contend that these two exceptions apply to him.

**10.** AR 350–100 ¶ 7 (November 25, 1985) provides:

 *a.* ADSOs assist the Army as follows:
 (1) Effectively manage its resources.
 (2) Accomplish its assigned mission.
 (3) Maintain an experienced and well-qualified officer force, within a limited budget.
 (4) Insure a reasonable return to the Army following the expenditure of public funds.
 *b.* Public funds are expended starting with the precommissioning phase, through training at the US Military Academy, Army ROTC, and other commissioning programs. It continues

when an officer enters active duty and enters expensive training or education programs to qualify for a certain utilization field.
 *c.* There are other active duty service obligations that are not directly related to the investment of public funds. These are incurred because of promotion to certain grades or by acceptance of career status. These ADSOs have been developed to ensure a reasonable degree of stability in the officer force.
 *d.* For the career-oriented officer, service under an ADSO is not particularly significant, except that it may affect the date of retirement. Additional service, because of ADSOs, is more important since voluntary separation from active duty may be precluded until all ADSOs are fulfilled. Therefore, officers must thoroughly understand the system by which the Army determines ADSOs.

order to undergo residency or similar training.

*Id.* at ¶ III.C.

### III. Estoppel

■ All of the Plaintiffs contend that the Defendants should be estopped from recalculating and extending their ADSOs in light of the Defendants' earlier representations upon which the Plaintiffs relied. This Court sympathizes with the Plaintiffs and understands the frustrations that they have endured as they have attempted to seek determinative dates of release from the Defendants. However, this Court rules that the Plaintiffs are required to exhaust their remedies before the Army Board for Correction of Military Records (ABCMR).

The Defendants concede that they had earlier provided Plaintiffs with miscalculated ADSOs as a result of bureaucratic mismanagement in which there was no coordination of information. However, the Defendants claim that these representations to Plaintiffs were made by individuals not authorized to bind the Defendants and that the Plaintiffs were not justifiably entitled to rely upon those representations. The ABCMR is in the best position in the first instance to address these issues.

The Plaintiffs had received numerous representations at different times from various levels of sources within the Army. For example, Plaintiff Gillogly asserts his estoppel claim against Defendants on the basis of the representations made to him while still in high school by USMA football coaches who were recruiting him. At the time the football coaches made these representations the 1972 regulation was in effect and the representations were accordingly correct. However, when Plaintiff Gillogly ultimately entered the AR 601–112 program a few years later the 1974 amendments had been established. On the other hand, Plaintiff Schaefer had received representations as late as March 7, 1988 from both Captain Shehan and her supervisor, LTC Linkous, whose responsibilities specifically included the calculations of ADSOs. This Court does not attempt to weigh the relative merits of Plaintiffs Schaefer's and Gillogly's estoppel claims but simply compares them to illustrate the varying levels to which the Defendants' organizational structure is implicated and the diverse contexts in which the representations were made. The ABCMR is more knowledgeable of the Defendants' structure and operation than this Court and accordingly better able to determine in the first instance what weight should be given to the representations that were made to the Plaintiffs. Moreover, the ABCMR has addressed such issues before and can determine a result based on equitable principles by comparison to what has occurred in past instances.

Plaintiffs contend, however, that they should not be required to exhaust their remedies in these cases because to do so would be an exercise in futility. Indeed, Defendant concedes that "it is not likely that the ABCMR would take a position contrary to the position that the Army takes herein." Defendants' Motion for Summary Judgment at 5 n. 3. *See Doe v. Weinberger,* 820 F.2d 1275 (D.C.Cir.1987); *Randolph–Sheppard Vendors of America v. Weinberger,* 795 F.2d 90 (D.C.Cir.1986); *Association of National Advertisers, Inc. v. FTC,* 627 F.2d 1151 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). However, simply because the ABCMR would not likely diverge from the position that the Defendants propose does not suggest that the ABCMR is not functioning in an independent capacity. A convergence of opinion should not suggest on its own that the ABCMR's role is merely illusory. Moreover, the Defendants have represented that the ABCMR would only be likely to adopt the Defendants' interpretation and application of the regulations, which are solely issues of law and which this Court has decided. As to Plaintiffs' estoppel claims the Defendants have represented that the ABCMR has full equitable powers to not only correct errors in service members' military records but, more broadly, to remove injustices. 10 U.S.C. § 1552(a).

Plaintiffs also contend that an appeal to the ABCMR would be time consuming and that they would accordingly be prejudiced by the wait. *See Hickey v. Commandant*

*of Fourth Naval District,* 461 F.Supp. 1085 (D.C.Pa.1978). However, the Plaintiffs all currently have petitions for review before the ABCMR and the Defendants have assured this Court that they will be handled expeditiously and a final decision reached on them within six months. Indeed, ABCMR's superior knowledge of the Defendants' institutional structure and operations may very well enable it to reach a quicker decision than this Court could. This Court reaches its ruling in part based on these representations and expects that the ABCMR and Defendants will act accordingly to provide Plaintiffs with a timely determination.[11]

It is hereby

ORDERED that Civil Action No. 89–2294 is consolidated with Civil Action No. 89–1850; and it is further

ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED.

### JUDGMENT ORDER

In accordance with this Court's Order of October 25, 1989 granting summary judgment in favor of Defendants it is hereby

ORDERED that JUDGMENT is ENTERED for Defendants.

---

**11.** The Plaintiffs have also expressed concerns that by pursuing their actions the Defendants may reprise against them and extend Plaintiffs' release dates to encompass their full ADSOs. However, the Defendants have represented to this Court that they will not require the Plaintiffs to fulfill their ADSOs to the fullest extent under the regulations and, as noted in the earlier review of each Plaintiff's history, the Defendants have accordingly provided this Court with the dates on which the Plaintiffs will be released from their service. These dates are in some instances considerably earlier than those which would apply if the Defendants required the Plaintiffs to completely fulfill their ADSOs. This Court has the fullest confidence in the integrity of the Defendants' official representations to this Court and finds that the Plaintiffs are accordingly entitled to rely upon those release dates.